RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0156p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

COMMONWEALTH OF KENTUCKY, EDUCATION AND
WORKFORCE DEVELOPMENT CABINET, OFFICE FOR
THE BLIND,

      *Plaintiff-Appellant*,

      *v.*

UNITED STATES OF AMERICA, by and through the
Honorable Chuck Hagel, Secretary of Defense, and
the Honorable John McHugh, Secretary of the
Army,

      *Defendant-Appellee*.

No. 12-6610

Appeal from the United States District Court
for the Western District of Kentucky at Paducah
No. 5:12-cv-00132—Thomas B. Russell, District Judge.

Decided and Filed:  July 21, 2014

Before:  MOORE, WHITE, and DONALD, Circuit Judges.

─────────────────

#### COUNSEL

**ON BRIEF:**  Patrick B. Shirley, COMMONWEALTH OF KENTUCKY, Frankfort, Kentucky,
for Appellant.  Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville,
Kentucky, for Appellee.

─────────────────

#### OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge.  The Randolph-Sheppard Act ("the Act"),
ch. 638, 49 Stat. 1559 (1936) (codified at 20 U.S.C. §§ 107–107e), gives blind persons a priority
in winning contracts to operate vending facilities on federal properties.  One of these properties

1

is Fort Campbell in Kentucky, which operates a cafeteria for its soldiers. For at least the last two decades, Kentucky's Office for the Blind ("OFB") has helped blind vendors apply for and win the base's contracts for various services. In 2012, the United States Army ("the Army"), the federal entity that operates Fort Campbell, published a solicitation, asking for bids to provide dining-facility-attendant services. Rather than doing so under the Act, as it had before, the Army issued this solicitation as a set aside for Small Business Administration Historically Underutilized Business Zones ("HUBZones"). OFB disagreed with this change in classification and, representing its blind vendor, filed for arbitration under the Act. OFB also sought a temporary restraining order ("TRO") and a preliminary injunction in the district court, requesting that the court stay the awarding of a new contract pending arbitration. The district court denied the requests, finding that it lacked jurisdiction to consider a request for a preliminary injunction. OFB appealed to this court. We now hold that OFB's failure to seek and complete arbitration does not deprive the federal courts of jurisdiction. The district court erred to the extent that it found differently. Therefore, we **VACATE** the district court's judgment and **REMAND** for reconsideration.

## I. BACKGROUND

### A. Randolph-Sheppard Act

In 1936, Congress passed the Randolph-Sheppard Act to "enlarge[e] the economic opportunities of the blind" by giving them priority in the bidding of contracts to operate vending facilities on federal properties. 20 U.S.C. § 107(a). "[V]ending facilit[ies]" include cafeterias and snack bars on military bases, such as Fort Campbell. § 107e(7).

When everything runs smoothly, the priority works as follows: the Secretary of Education ("the Secretary") designates a "licensing agency" for each state. § 107a(a)(5). These state licensing agencies then provide the blind with training, equipment, certification, and—if necessary—legal representation. *See* §§ 107b(2), (6); 107d-4; 107a(b); 34 C.F.R. § 395.33. When a federal agency, such as the Army, solicits vending-facility services, it must invite the state licensing agency to bid on the contract. 34 C.F.R. § 395.33(b). The state licensing agency will then select a blind vendor and submit a bid if the vendor can "provide food service at comparable cost and of comparable high quality . . . ." *Id.* If the state licensing agency's

proposal, according to neutral, pre-published criteria, is within "a competitive range" and the Department of Education ("DOE") agrees with the state licensing agency's assessment of the vendor's qualifications, the blind vendor will be awarded the contract. § 395.33(a), (b). When a vending-facility-services contract nears expiration, the federal agency may directly negotiate with the state licensing agency to renew the contract, or it can open bidding to the general public, triggering the same procedure outlined above. § 395.33(d).

In the event that disputes arise, the Act and DOE's regulations provide for arbitration between the state licensing agency and the federal agency soliciting vending-facility services. *See* 20 U.S.C. § 107d-1; 34 C.F.R. §§ 395.33(b), 395.37. The DOE and the parties will select and convene an arbitration panel, which then conducts a hearing and issues a decision. 20 U.S.C. § 107d-2(b); 34 C.F.R. § 395.37(b), (c), (f). The panel's decision is considered to be the final agency action and to be binding upon the parties. 20 U.S.C. § 107d-1(b); 34 C.F.R. § 395.37(b). If the federal agency is found to be non-compliant, the regulations provide that "the head of any such department, agency, or instrumentality . . . shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." § 395.37(d). The regulations then provide for judicial review of the panel's decision. *Id.*; *see also* 5 U.S.C. §§ 701–706.

## B. Facts and Procedural History

In Kentucky, OFB is the state licensing agency. In this role, it licenses and trains blind vendors. It also submits bids on their behalf for vending-facility-services contracts on federal properties. In 1995, the OFB appointed James E. Hardin as its blind licensed vendor and submitted a bid for the contract with the Army to perform full-food and dining-facility-attendant services[1] in Fort Campbell's cafeteria. R. 1 at 5 (Compl. at ¶ 10) (Page ID #5). DOE and the Army adjudged OFB's bid sufficiently competitive, and OFB received the contract. *Id.* Hardin formed a joint venture, First Choice Food Services ("First Choice"), and went about performing the contract. R. 1-1 at 3–4 (Pl. Mem. for TRO) (Page ID #21–22).

---

[1]Dining-facility-attendant services include cleaning and janitorial services. Full-food services also include preparing and serving meals. *See* Appellant Br. at 4 n.1.

In 2000, OFB contacted the Army regarding direct negotiations for the extension of the Fort Campbell contract. R. 1-5 at 5 (2002 Arbitration Decision) (Page ID #49). The Army declined the invitation and posted a new solicitation for dining-facility-attendant services. *Id.* at 6 (Page ID #50). The Army eventually declared that "[t]he new solicitation [would be] administered as a SBA . . . set aside procurement and not as a Randolph-Shep[p]ard procurement." *Id.* at 7 (Page ID #51). OFB filed for arbitration pursuant to 34 C.F.R. § 395.33(b). The arbitration panel found in 2002 that the Act covers dining-facility-attendant services and ordered the Army to negotiate with the OFB regarding the continuation of the contract. R. 1-5 at 13 (Page ID #57).

In 2007, the Army solicited bids for the performance of full-food and dining-facility-attendant services. Again, DOE and the Army adjudged OFB's bid competitive, and OFB received the contract. R. 1 at 5 (Compl. at ¶ 10) (Page ID #5). First Choice[2] performed the contract.

In August 2012, the Army decided to rely once again upon its own cooks for meal preparation and service. *See* R. 1-4 at 1 (Brinly Letter) (Page ID #41). It also solicited bids for dining-facility-attendant services, a solicitation that the Army classified as a set aside for SBA HUBZones. *See* R. 1-2 at 1 (Solicitation) (Page ID #36). OFB objected to the SBA HUBZones classification. R. 1-4 at 1–3 (Brinly Letter) (Page ID #41–43). In a letter, OFB cited the 2002 arbitration decision, which held that dining-facility-attendant services were covered by the Act. *Id.* at 2–3 (Page ID #42–43). The Army replied, stating that its "interpretation of the [Act] is that it applies only when contracting for the operation of military dining facilities," meaning full-food services. R. 1-6 at 1 (Fletcher-Schiewe Letter) (Page ID #59).

As a result of being rebuffed, OFB demanded arbitration with the DOE on September 14, 2012. R. 1-7 at 17 (Arbitration Compl.) (Page ID #78). The arbitration complaint asked DOE to convene an arbitration panel, to find the Army in violation of the Act, and to order the Army to comply with the terms of the Act. *Id.* at 16–17 (Page ID #77–78). Three days later, OFB filed a self-styled "Motion and Complaint for Temporary Restraining Order and Preliminary Injunction"

---

[2]At some point between 2007 and 2012, Faye Autry replaced Hardin as the blind licensed vendor and continued to operate First Choice. *See* R. 1 at 5 n.1 (Compl. ¶ 10) (Page ID #5).

in federal district court. R. 1 at 1 (Compl.) (Page ID #1). This filing requested that the district court hold an expedited hearing and issue a TRO or preliminary injunction "prohibiting the Army from either conducting the procurement and/or making award to an offeror pursuant to [the solicitation] until such time as the arbitration proceeding required by 20 [U.S.C.] § 107d-1(b) is concluded." *Id.* at 14 (Page ID #14). The Army replied, arguing that OFB could not meet the standard for injunctive relief on the merits. R. 7 at 5–11 (Def. Resp. in Opp'n) (Page ID #109–15). In the alternative, the Army argued that the district court lacked jurisdiction to entertain the motion because OFB had not exhausted its administrative remedies, namely that OFB had not completed arbitration. *Id.* at 11–16 (Page ID #115–120). OFB disagreed. R. 8 at 1–16 (Pl. Reply) (Page ID #374–389).

On October 9, 2012, the district court held a hearing on the preliminary injunction. It issued its decision two weeks later on October 23, denying the injunction and dismissing the action without prejudice. *See* R. 11 at 11 (D. Ct. Op.) (Page ID #420). The district court found that it lacked jurisdiction to consider OFB's request because OFB had not exhausted its administrative remedies. *Id.* at 9–10 (Page ID #418–19). In the alternative, the district court stated that "even if [it] were to find it had jurisdiction to issue a preliminary injunction, [OFB] has not shown that such an 'extraordinary remedy' is warranted in this case. . . . [I]n light of the DOE's evolving views on the applicability of the [Act] to [dining-facility-attendant]-only contracts, it is not clear that the [OFB] will prevail on the merits." *Id.* at 11 (Page ID #420). The Army alerted the district court to the fact that the blind licensed vendor's contract would expire on March 31, 2013 and that Federal Acquisition Regulation § 52.217-8 barred the Army from extending the contract further while arbitration was pending. R. 13 at 1 (Def. Mot. for Correction) (Page ID #422); *see also* R. 10 at 2 (Def. Supp. Resp.) (Page ID #406). The district court reaffirmed its finding that it lacked jurisdiction. R. 18 at 1 (D. Ct. Oct. 30, 2012 Order) (Page ID #437).

On November 2, 2012, OFB filed a Motion to Alter or Amend pursuant to Federal Rule of Civil Procedure 59. R. 19 at 1–11 (Pl. Mot. to Alter) (Page ID #438–448). OFB requested that the district court reconsider its finding that OFB had not shown that it would suffer irreparable harm absent a preliminary injunction because the Army alerted the district court that

the solicitation would close on November 9, 2012 and that the blind licensed vendor's contract would expire March 31, 2013. *Id.* at 1–2 (Page ID #438–39). The district court denied the motion. *See* R. 22 (D. Ct. Dec. 4, 2012 Order) (Page ID #463). The district court reaffirmed that it "denied OFB's request for a preliminary injunction based on its finding that it lacked jurisdiction." *Id.* at 2 (Page ID #464). It also stated that its "discussion of irreparable harm was limited to two sentences in the opinion's final paragraph, which discussed in dicta that a preliminary injunction may not have been warranted 'even if [the district court] were to find it had jurisdiction.'" *Id.* (quoting R. 11 at 11 (D. Ct. Op.) (Page ID #420)).

OFB appealed the district court's rejection of its Rule 59 motion to this court on December 20, 2012. R. 23 at 1 (Notice of Appeal) (Page ID #467). While its appeal was pending, on January 31, 2013, OFB filed in this court a Motion for Injunction Pending Appeal pursuant to Federal Rule of Appellate Procedure 8. In its motion, OFB recited the arguments it raised in district court and requested that this court enjoin the Army from awarding the dining-facility-attendant contract until arbitration was completed. In response, the Army argued that this court had jurisdiction to consider only whether the district court erred in finding that it did not have jurisdiction to rule on the merits of OFB's claims. Additionally, the Army filed a Motion to Dismiss Appeal, asserting that OFB's appeal is moot because the Army had already awarded the contract.

We denied both motions on March 28, 2013. *Kentucky Educ. & Workforce Dev. Cabinet Office for the Blind v. United States*, No. 12-6610, at *3 (6th Cir. Mar. 28, 2013) (unpublished order) ("*Office for the Blind*"). We held that this situation was "'capable of repetition, yet evading review'" and, thus, not moot. *Id.* at *2 (quoting *In re Search of Fair Fin.*, 692 F.3d 424, 428 (6th Cir. 2012)). Furthermore, we also held that "[t]he district court did not abuse its discretion in denying the preliminary injunction" and noted that "[n]umerous courts, including this court, have required exhaustion under similar circumstances." *Id.* (citing *Fillinger v. Cleveland Soc'y for the Blind*, 587 F.2d 336, 338 (6th Cir. 1978) ("*Fillinger I*")). Three days later, on March 31, the blind licensed vendor's contract expired with the Army, and the next day, the winner of the solicitation started providing dining-facility-attendant services.

Arbitration continued between the Army and OFB, and on February 14, 2014, the arbitration panel issued a divided decision, siding with OFB. The arbitration panel concluded that the Act covers the dining-facility-attendant services at Fort Campbell and that the Army violated the Act by soliciting bids as a HUBZones set aside. Arb. Dec. at 26, 27. Accordingly, the panel ordered the Army to terminate its contract with its current vendor on March 31, 2014 and to commence negotiations with OFB immediately for a new contract to take effect on April 1, 2014. *Id.* at 28. OFB has continued its appeal, and we asked the parties to supply letter briefing regarding whether the appeal is now moot.

## II. ANALYSIS

In its briefing before this court, OFB asks us to hold that the district court erred in finding that it lacked jurisdiction to issue a preliminary injunction, which could have stayed the awarding and implementation of the contract pending arbitration. At this point in time, the Army has already awarded the contract, arbitration has already been completed, and OFB has filed another suit in district court, seeking to enforce the arbitration panel's decision. Therefore, two questions arise: (1) is OFB's appeal moot; and (2) if not, did the district court err in its jurisdictional finding? We answer the first question in the negative and the second one in the affirmative.

### A. Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "When— for whatever reason—the dispute discontinues or we are no longer able to grant meaningful relief to the prevailing party, the action is moot, and we must dismiss for lack of jurisdiction." *United States v. Blewett*, 746 F.3d 647, 661 (6th Cir. 2013) (Moore, J., concurring) (citing *Knox v. Serv. Emp. Int'l Union*, 132 S. Ct. 2277, 2287 (2012)); *accord Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). "'[I]t is not enough that a dispute was very much alive when suit was filed.'" *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 461 (2007) (quoting *Lewis*, 494 U.S. at 477). There must be a live controversy "at every stage of the litigation" for us to have Article III jurisdiction. *Lawrence v. Blackwell*, 430 F.3d 368, 370–71 (6th Cir. 2005).

This doctrine, however, is not without its exceptions. "[A] case will not be considered moot if the challenged activity is capable of repetition, yet evading review." *Id.* at 371; *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Weinstein v. Bradford*, 423 U.S 147, 149 (1975). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"[3] *Wisconsin Right to Life*, 551 U.S. at 462 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). In our March 28, 2013 order, we held that OFB's suit challenging the Army's solicitation of bids outside the Act's requirements fit within this exception. The same is true today.

The time between when the Army publishes its solicitation of bids and when the new vendor's contract goes into effect is exceptionally short. In this case, the Army posted its solicitation on August 28, 2012 and established a closing date of September 19, 2012. R. 1 at 7 (Compl. at ¶¶ 15, 17) (Page ID #7). OFB's contract was set to expire December 31, 2012, though the Army extended it three months. *See* R. 10 at 2 (Def. Supp. Resp.) (Page ID #406). However, the Army claims that regulations prevented it from extending it further. *See* Appellee Br. at 10 & n.4 (citing FAR § 52.217-8). The district court ruled quickly on October 23, 2012, R. 11 at 11 (D. Ct. Op.) (Page ID #420), but the case did not reach us until December 21, 2012, with the appellant's brief not due until February 4, 2013. Absent an extension from the Army,

---

[3] In several recent cases, the Supreme Court has reaffirmed that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014) (internal quotation marks omitted); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (same). In doing so, the Court has placed the continuing vitality of the prudential aspects of standing and ripeness, doctrines that sound in Article III and are closely related to mootness, in doubt. *See Driehaus*, 134 S. Ct. at 2347 (ripeness); *Lexmark*, 134 S. Ct. at 1386–88 (standing).

As with standing and ripeness, there are constitutional and prudential aspects to the mootness doctrine as well, *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citing *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178–79 (D.C. Cir. 1983) (Bork, J., concurring)), but it is not always easy to distinguish the constitutional aspects of mootness, grounded in Article III, from the prudential ones, grounded in policy, *see, e.g., United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 420 n.15 (1980) (Powell, J., dissenting) (accusing the majority of conflating the two arms of the doctrine). The "capable of repetition yet evading review" exception itself straddles the constitutional/prudential divide. At least one member of the Court has interpreted "the probability of recurrence between the same parties" portion of the exception to be "essential to [federal-court] jurisdiction," *see Honig v. Doe*, 484 U.S. 305, 341 (1988) (Scalia, J., dissenting); the same Justice, who recently penned *Lexmark*, also considers the "evading review" portion of the exception to be prudential, *see Honig*, 484 U.S. at 341. We interpret the exception's test, as stated above and applied, to focus upon the constitutional aspects of mootness and to be grounded in Article III, as both prongs focus upon whether an actual controversy exists between the parties. *See id.* Therefore, although in the future the Supreme Court may reexamine the mootness doctrine, the doctrine as it exists today compels us to exercise jurisdiction over this claim if OFB can demonstrate that the "capable of repetition, yet evading review" exception applies.

the case arguably could have been moot ten days after reaching us. Even with the extension, there would be little time for us to consider OFB's reply brief, originally due March 24, 2013, before the new contract took effect. Accordingly, we hold that the facts of this case demonstrate that the controversy expires too quickly for OFB to litigate the matter before the contract goes into effect. *See Turner v. Rogers*, 131 S. Ct. 2507, 2515 (2011) (noting that 12-month, 18-month, and two-year time periods qualified as too short in duration to be litigated sufficiently).

Additionally, the history of these parties demonstrates that this scenario will likely play out again between them in the future. At roughly five-year intervals, the Army solicits bids for dining-facility-attendant services. *See* R. 1 at 5–6 (Compl. at ¶¶ 10–12) (Page ID #5–6). On at least two prior occasions, OFB has challenged the Army's decision that a solicitation is not governed by the Act. *See* R. 1-4 at 1–3 (Brinly Letter) (Page ID #41–43) (citing other cases and disputes); *see also Kentucky, Educ. Cabinet, Dep't for the Blind v. United States*, 424 F.3d 1222 (Fed. Cir. 2005) ("*Dep't for the Blind*"); *Kentucky v. United States*, 62 Fed. Cl. 445 (2004). It does not appear likely that the Army will stop needing dining-facility-attendant services, nor does it appear likely that OFB will stop asserting that the Act applies to these contracts. Thus, there is a reasonable expectation that a district court, in the not so distant future, will face a request that it issue an injunction to stay the awarding of a contract pending arbitration involving these parties. *Cf. Turner*, 131 S. Ct. at 2515 (holding that a defendant's frequent failure to make child-support payments in the past created a reasonable expectation that the dispute would arise again between the same parties). As a result of these two determinations, we hold that OFB's appeal fits within "the capable of repetition, yet evading review" exception and is, therefore, not moot.

**B. Jurisdiction**

The district court denied OFB's application for a preliminary injunction because OFB had not exhausted its administrative remedies, namely arbitration. In doing so, the district court found that it lacked jurisdiction to decide the case. In self-described "dicta," *see* R. 22 at 2 (D. Ct. Dec. 4, 2012 Order) (Page ID #464), the district court also found that OFB's application lacked merit because "it [was] not clear that [OFB] [would] prevail on the merits," R. 11 at 11 (D. Ct. Op.) (Page ID #420). We stated, in our March 28, 2013 order, that "[t]he district court

did not abuse its discretion in denying the preliminary injunction." *Office for the Blind*, No. 12-6610, at *2. The parties, however, do not read our order as disposing of their case, and admittedly, the order is not a model of clarity. As a result, we address the parties' concerns below, and we hold that exhaustion is not a jurisdictional prerequisite and that OFB has demonstrated that it meets an exception to the Act's statutory exhaustion requirements.

### 1. Completing Arbitration Is Not a Jurisdictional Prerequisite

In recent years, the Supreme Court has recognized that jurisdiction "'is a word of many, too many, meanings'" used far too loosely by federal courts. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). Too often, the Court has observed, federal courts "dismiss[] 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (internal quotation marks omitted). The Court has acknowledged that "the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010). However, in an effort to avoid "drive-by jurisdictional rulings," *Steel Co.*, 523 U.S. at 91, the Court has instituted a clear-statement rule requiring Congress to "state[] [clearly] that a threshold limitation on a statute's scope shall count as jurisdictional . . . ." *Arbaugh*, 546 U.S. at 515.

Under this rule, the Act's exhaustion requirement is not jurisdictional. Section 107d-1(b) provides that

> Whenever any [s]tate licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of [the Act] or any regulations issued thereunder . . . such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

This language does not rise to the level of a clear statement. Section 107d-1 is simply not phrased in jurisdictional terms. Our decision in *Allen v. Highlands Hospital Corp.*, 545 F.3d 387

(6th Cir. 2008), is helpful here. In that case, we held that an exhaustion requirement in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, did not meet *Arbaugh*'s stringent test. The ADEA provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission [('EEOC')]." 29 U.S.C. § 626(d). In *Allen*, we found it important that this provision does not reference the jurisdiction of federal courts. Moreover, we said that § 626(d)'s language stating that "no civil action may be commenced" until an EEOC charge has been filed "does not suffice to show that Congress intended for the requirement to be jurisdictional in nature." *Allen*, 545 F.3d at 402. Similarly, here § 107d-1 of the Act does not reference the jurisdiction of federal courts, nor does it contain language remotely close to 29 U.S.C. § 626(d)'s "no civil action" bar. Thus, given *Allen*'s treatment of the ADEA and *Arbaugh*'s caution against "drive-by jurisdictional rulings," we hold that 20 U.S.C. § 107d-1 does not create a jurisdictional prerequisite.

The Army cites a variety of cases and argues that they hold otherwise. We are unconvinced. First, most of the cases predate the Supreme Court's decisions in *Arbaugh* and *Muchnick*, which altered how we interpret exhaustion requirements. *See, e.g.*, *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 789 (6th Cir. 2012) (collecting cases in which we revisited prior holdings after *Arbaugh*); *Hoogerheide v. IRS*, 637 F.3d 634, 636 (6th Cir. 2011) (same). Second, the Army appears to confuse a mandatory exhaustion requirement with a jurisdictional one. There is a subtle, but important, difference. The ADEA's requirement that a plaintiff file a complaint with the EEOC before commencing a civil action in district court is certainly not optional. *Allen*, 545 F.3d at 401. Federal courts, however, can craft prudential exceptions to non-jurisdictional exhaustion requirements and grant relief in extraordinary cases, as explained below. *See McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992) (noting various exceptions to exhaustion requirements). On the other hand, if a jurisdictional requirement is not met, then a federal court must dismiss the suit, regardless of any special considerations or circumstances. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) (noting that forfeiture and waiver arguments could not cure failure to comply with jurisdictional time limitations). The bar for establishing a jurisdictional requirement is quite high and not to be inferred lightly. For the reasons stated above, we do not believe the Act contains statements sufficient to clear this hurdle and impose a

limit on the jurisdiction of federal courts. Thus, we hold that the Act's exhaustion requirement is not jurisdictional.

### 2. OFB Meets an Exception to the Act's Jurisprudential Exhaustion Requirement

Even though the Act's exhaustion requirement is not jurisdictional, it has bite. *See, e.g.*, *Dep't for the Blind*, 424 F.3d at 1228; *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986); *Alabama Dep't of Rehab. Servs. v. U.S. Dep't of Veterans Affairs*, 165 F. Supp. 2d 1262, 1270 (M.D. Ala. 2001). In most cases, a failure to exhaust administrative remedies is fatal to a suit in federal court. *See, e.g.*, *Hoogerheide*, 637 F.3d at 634 (collecting cases). Exhaustion requirements, like this one, "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. "[E]xhaustion principles apply with special force when 'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures." *Id.* (quoting *McKart v. United States*, 395 U.S. 185, 195 (1969)). That said, exhaustion is an area of law in which "sound judicial discretion governs" "where Congress has not clearly required exhaustion [as a jurisdictional matter]." *Id.* at 144 (citing *McGee v. United States*, 402 U.S. 479, 483, n.6 (1971)). In accordance with that discretion, the federal courts have recognized at least three prudential exceptions to exhaustion requirements. Exhaustion may be excused if a litigant can show: (1) that requiring exhaustion will result in irreparable harm; (2) that the administrative remedy is wholly inadequate; or (3) that the administrative body is biased, making recourse to the agency futile. *Id.* at 146–48; *Randolph-Sheppard Vendors*, 795 F.2d at 104–108.

In this case, we conclude that exhaustion should have been excused because requiring the completion of arbitration prior to filing in federal court for a preliminary injunction would likely result in irreparable harm. Under OFB's conception of the Act and its accompanying regulations, the Army must negotiate exclusively with OFB for the successor dining-facility-attendant-services contract, *see* 34 C.F.R. § 395.33(d), or the Army must give OFB a priority in the bidding process, *see* § 395.33(a)–(b). Under either scenario, Ms. Autry and First Choice would continue to provide the dining-facility-attendant services so long as the cost and quality of the services remained competitive. *See* § 395.33(b). However, because the Army chose to issue

the solicitation as a HUBZones set aside, the successor contract went to another firm, and Ms. Autry and First Choice were ousted as incumbents and had to close up shop. Although a mere loss of profits generally will not qualify as irreparable harm, *see Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995) ("[M]onetary damages do not generally constitute irreparable harm."), here the public policy in favor of economic stability and opportunities for the blind was also implicated, and additionally, OFB and the Army agree that sovereign immunity bars the arbitration panel (or a federal court) from granting OFB damages in the event that the Army is found to have violated the Act, *see* Appellant Letter Br. at 7–9; Appellee Letter Br. at 9–10; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."); *but see Tennessee Dep't of Human Servs. v. U.S. Dep't of Educ.*, 979 F.2d 1162, 1167 (6th Cir. 1992) (finding that a DOE arbitration panel's award of damages against a state does not offend the Eleventh Amendment). As a result, we conclude that requiring OFB to complete arbitration before challenging the Army's decision not to apply the Act would result in a loss for which there is no remedy, an irreparable harm. Therefore, OFB meets the irreparable-harm exception, and the district court could have—and should have—considered OFB's claim.

## C.  Merits and Remedy

Having settled that the district court had jurisdiction to consider OFB's request for an injunction, we turn to the district court's alternative conclusion, denying the application on the merits. In reviewing a district court's decision to deny a preliminary injunction, we evaluate the same four factors that the district court does: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotation marks omitted). "Whether the movant is likely to succeed on the merits is a question of law we review de novo." *Id.* (citing *NAACP v. City of Mansfield*, 866 F.2d 162, 169 (6th Cir. 1989)). "We review 'for abuse of discretion, however, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying

preliminary injunctive relief.'" *Id.* (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "This standard is deferential, but [we] may reverse the district court if it improperly applied the governing law, used an erroneous legal standard, or relied upon clearly erroneous findings of fact." *Id.* (citing *NAACP*, 866 F.2d at 166–67). In addition, we must remember that "[t]he party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Michigan Catholic Conf. & Catholic Family Servs. v. Burwell*, --- F.3d ---, 2014 WL 2596753, at *5 (6th Cir. 2014) (internal quotation marks omitted).

The district court denied OFB's request for a preliminary injunction because it found—in two, rather conclusory sentences—that OFB had not shown that it was likely to succeed on the merits. R. 11 at 11 (D. Ct. Op.) (Page ID #420). Since the district court rendered its decision, however, a DOE arbitration panel has ruled that the Act applies to the dining-facility-attendant-services contract. Given this change in circumstances and the unusual posture of this case, we think it best to allow the district court to consider whether any injunctive relief is available or appropriate at this time. *See City of Pontiac*, 751 F.3d at 432–33. Therefore, we vacate the district court's decision and remand for further proceedings consistent with this opinion.

## III. CONCLUSION

In summary, OFB's application for a preliminary injunction is not moot. Even though the contract it wished the district court to stay went into effect, the alleged wrong is capable of repetition, yet evading review, and thus meets an exception to the mootness doctrine. In addition, OFB's failure to exhaust its administrative remedies did not deprive the district court of jurisdiction to hear this case. Given that the arbitration panel has rendered its decision and another suit between the parties has commenced since the district court's decision, we **VACATE** the district court's judgment and **REMAND** for reconsideration consistent with this opinion.