RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

In re: 2016 PRIMARY ELECTION.

───────────────────────────────────

HAMILTON COUNTY BOARD OF ELECTIONS (16-3350);
OHIO SECRETARY OF STATE (16-3352); BUTLER
COUNTY BOARD OF ELECTIONS (16-3357),
                                     *Appellants.*

Nos. 16-3350/3352/3357

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 1:16-mc-00005—Susan J. Dlott, District Judge; Timothy S. Black, District Judge.

Decided and Filed:  September 6, 2016

Before:  COLE, Chief Judge, and SILER and SUTTON, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Roger S. Gates, BUTLER COUNTY PROSECUTOR'S OFFICE, Hamilton, Ohio, David T. Stevenson, Cooper D. Bowen, HAMILTON COUNTY BOARD OF ELECTIONS, Eric E. Murphy, Stephen P. Carney, Peter T. Reed, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellants.  Rachel S. Bloomekatz, GUPTA WESSLER PLLC, Columbus, Ohio, for Amica Curiae.

      SUTTON, J., delivered the opinion of the court in which SILER, J., joined, and COLE, C.J., joined in part.  COLE, C.J., (pp. 8–10), delivered a separate opinion concurring in part and dissenting in part.

───────────────

## OPINION

───────────────

      SUTTON, Circuit Judge.  A revealing difficulty with this matter is what to name it. At the district court, the caption read "IN RE:  2016 Primary Election."  That's all the court

1

could say because the matter arose out of an anonymous phone call to the district court clerk's office. The caller complained about an accident in the Cincinnati area that might make it difficult for voters to reach the polls before they closed at 7:30 p.m. on March 15, 2016, the date of Ohio's primary election. The clerk's office relayed the phone call to one of the judges of the district court, apparently no longer in the courthouse, who orally directed the clerk to enter the following order to keep polling locations in four counties open for an extra hour:

> This matter is before the court upon an oral complaint requesting that the polling locations within the counties of Butler, Clermont, Hamilton and Warren be extended for one hour due to Interstate I-275 being closed for hours due to a fatal accident. The request is hereby GRANTED and the Secretary of State is hereby ordered to keep the polling locations within the counties of Butler, Clermont, Hamilton and Warren open until 8:30 p.m.

R.1 at 1.

No complaint preceded the district court's order on the docket. No complaint materialized after. Lacking a plaintiff, the caption read: "IN RE: 2016 Primary Election." *Id.* There was no plaintiff to name in the caption because no one identified himself or herself during the phone call to the clerk's office—or after. There was no defendant to name because there was no complaint, though the Secretary of State presumably felt like a defendant once he received the order.

Concerned that the district court never had jurisdiction over this anonymous complaint and eager not to be subject to similar last-minute election orders of this sort again, the Ohio Secretary of State timely appealed the order. The boards of elections of two of the counties covered by the district court's order, Hamilton County and Butler County, filed appeals as well. Those captions, too, use "In re" nomenclature because no plaintiff yet exists to name as the appellee.

We appointed Rachel Bloomekatz to defend the order as an amica curiae and to brief our authority to review it. She has admirably handled that task. Court-appointed counsel together with the lawyers for the State have filled in some of the details of what happened based on newspaper accounts that neither side disputes.

Around 4:30 p.m. on March 15, a car plunged off the Combs–Hehl Bridge into the Ohio River. *See, e.g.*, Kate Murphy & Mallorie Sullivan, *Officials ID man recovered from car that fell into Ohio River*, Cincinnati Enquirer (Mar. 27, 2016, 8:49 PM), http://cin.ci/1MvOR5j. The Combs–Hehl Bridge is mostly on the Kentucky side of the Kentucky–Ohio border, but many commuters use its eastbound lanes to return to Ohio in the evening. *See* Am. Br. 6–7. "The eastbound lanes of the bridge were closed for almost six hours, which caused a major traffic backup on I-275 toward Ohio." *Car falls off Cincinnati bridge and into Ohio River*, NBC26 (Mar. 16, 2016, 4:58 AM), http://bit.ly/29xLDwU.

According to newspaper reports, the district court judge was attending a "law school dinner in downtown Cincinnati" when she received a phone call from the clerk's office around 7:00 p.m. Dan Horn, *Judge: Stranded drivers 'wanted to vote,'* Cincinnati Enquirer (Mar. 16, 2016, 5:19 PM), http://cin.ci/29K9YlO. The judge later told the *Cincinnati Enquirer* that the clerk's office told her that unidentified "stranded motorists who couldn't get to the polls to vote" were "ask[ing] if there was anything the court could do to help." *Id.* She agreed to help.

She directed a clerk's office employee to call the Secretary of State's Office to let them know that the court would enter an order extending the polling hours from 7:30 to 8:30 p.m. To ensure consistency across the State, Ohio requires all polls not located on an island to close their lines at 7:30 p.m. on election day. *See* Ohio Rev. Code § 3501.32(A). The phone call from the clerk's office went to the cell phone of Assistant Secretary of State Matthew Damschroder, who oversees elections on behalf of the Secretary of State. He missed the call, which came in at 7:28 p.m. The clerk's office employee left him a voicemail, which he noticed right away. Yet by the time Damschroder had finished listening to the 43-second voicemail, the Ohio polls had closed—a minute or so earlier. During the next hour, state and local election officials, reluctant to defy the order of a federal judge, scrambled to comply with the oral order and the subsequent written order by trying to reopen the pertinent polling locations. They managed to comply in part: "[S]ome polls were open and others were not." Appellants' Br. 18.

The district court eventually docketed the matter on March 30, 2016. The Ohio Secretary of State and intervenors Hamilton County Board of Elections and Butler County Board of Elections (all told, the State) timely appealed.

The appeal presents (at least) two jurisdictional questions:  Did the district court have jurisdiction to issue its order at the outset given the anonymous nature of the phone call and the absence of a named plaintiff or a John Doe plaintiff?  And is there still jurisdiction over the order given that the election has come and gone and the dispute may be moot?

We have authority over both jurisdictional issues.  As to the first question, we always have "jurisdiction on appeal . . . for the purpose of correcting the error of the lower court in entertaining the suit" in the first place—in this instance due to the potential absence of a claimant with standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quotation omitted).  As to the second question, we have jurisdiction to decide whether a dispute has become moot or whether it is capable of repetition yet evading review.  *See Murphy v. Hunt*, 455 U.S. 478, 483–34 (1982).

Federal law does not provide any order of battle in this setting.  It simply "does not dictate a sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  All that matters is that courts must decide jurisdictional issues before merits issues. Deciding one jurisdictional issue before another "makes no assumption of law-declaring power." *Ruhrgas*, 526 U.S. at 584 (quotation omitted).  That gives us discretion to address jurisdictional issues "in any sequence we wish," *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc), including by resolving the "eas[y]" rather than the more "difficult" jurisdictional issue. *Ruhrgas*, 526 U.S. at 586; *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67 (1997) (same).

The standing issue in our estimation is the easier of the two issues to resolve.  "Federal courts," it bears repeating, "are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Before they may act, they must ensure their power to act.

One elemental precondition for acting is a "case[]" or "controvers[y]," U.S. Const. art. III, § 2.  And one elemental precondition for meeting the case-or-controversy requirement is a claimant with standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  There is no plaintiff with standing if there is no plaintiff.  Until someone comes forward as a plaintiff by name or as a John Doe plaintiff (with an adequate description of his circumstances to ensure he

has a concrete interest in a live dispute), there is no plaintiff with standing. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). To permit plaintiff-less complaints is to permit the federal courts to issue advisory opinions and non-advisory orders in all manner of circumstances prompted by all manner of anonymous phone callers. A system that permits relief to be granted in connection with a plaintiff-less complaint is as close as we will ever come to permitting "ghosts that slay." Felix Frankfurter, *A Note on Advisory Opinions*, 37 Harv. L. Rev. 1002, 1008 (1924).

Nor is it enough just to have an identified individual claimant. A complaint must link the claimant to the entities or individuals being asked to do something. In this instance, that meant the district court at a minimum needed four plaintiffs, one registered to vote in each of the four covered counties but who had not yet voted. Otherwise, there was no concrete and redressable injury, no case or controversy, and no authority to order the relevant election board to do anything. *See Lujan*, 504 U.S. at 560–61.

Plaintiff-less complaints are no less problematic when the court *denies* relief on the merits. How will the court inform an anonymous plaintiff of the order? How will the caller know whether or when to appeal? One question leads to another. And the answers to all of them counsel in favor of standing by the Article III requirements that establish when federal courts have power to act and when they don't.

The amica urges us to resolve the case on mootness, not standing, grounds. In support, she cites *Allen v. Mansour*, 928 F.2d 404, 1991 WL 37832 (6th Cir. Mar. 19, 1991) (table disposition), for the proposition that "standing in the district court need not be addressed first to determine the proper disposition." Am. Br. 18–19. True enough. But that does not show we lack authority to resolve this case on standing grounds. As we explained in *Allen*, mootness "is akin to saying that, although an actual case or controversy once existed, changed circumstances have intervened to destroy standing." *Allen*, 1991 WL 37832 at *1. All we do here is exercise our discretion to address the threshold jurisdictional question because we don't want to leave the false impression that there was "Article III standing at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). There was not.

The mootness inquiry also is not free from doubt and indeed is not even amenable to resolution on this barest of records.  Review of a district court decision is not moot when the situation is "capable of repetition, yet evading review." *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quotation omitted).  "Challenges to election laws quintessential[ly] evade review because the remedy sought is rendered impossible by the occurrence of the relevant election." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 452–53 (6th Cir. 2014) (quotation omitted).  For this reason, the evading-review requirement is "somewhat relaxed in election cases" even if "the challenging parties do not have cognizable legal interests" by the time the case reaches us.  *Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 932 (6th Cir. 2013) (quotation omitted).  No one could plausibly think that the Ohio officials were in a position both to comply with the district court's order and to obtain appellate review of that order within the hour.  At a minimum, there is an evading-review problem.

What of a capable-of-repetition problem?  The amica suggests that the circumstances underlying this dispute—a sort of 100-year flood—are not likely to happen again anytime soon.  Maybe so.  But that's only if one defines the case in the most specific of ways—as about a traffic accident on a bridge on the Kentucky side of the Ohio River that interfered with getting to some polls.  But if one looks at the problem as being about anonymous phone calls claiming that traffic accidents or weather-related problems are preventing voters from getting to the polls, it's  easy to see the problem arising again.

In the face of an absent and anonymous claimant and the merest of records, moreover, it is impossible to say that *this complaining party* would not be subjected to the same action again.  *See Chirco v. Gateway Oaks L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004).  It's tilting at windmills to try to define the complaining party.  Was it a registered voter from the Buckeye State? A party operative?  A poll worker?  Or just a concerned citizen?  If it was a concerned citizen or a party operative, it's easy to see similar anonymous phone calls that seek poll-hour extensions in the future—whenever anything gets in the way of some people voting by 7:30 p.m. on election day.  If it was one voter seeking to exercise his or her right to vote that day, then the situation is less likely to repeat itself.  But who can know what happened here?  A plaintiff-less complaint

not only creates an Article III standing problem, but it also makes it impossible to answer the mootness capable-of-repetition question. The amica and the dissent offer no answer to this point.

The district court judge, we realize, was in a difficult spot. She was out of the office. It was late. She had little time to act. All of this presumably led her to err on the side of protecting people's right to vote. But none of this explains why the clerk's office or the court couldn't answer the phone call with the most natural of questions: "Who is it?" And none of this allowed the court to sidestep the Article III limitations on our power.

For these reasons, we vacate the district court's preliminary injunction and remand the matter for dismissal for lack of subject matter jurisdiction.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

COLE, Chief Judge, concurring in part and dissenting in part. Ohioans went to the polls on March 15, 2016. That evening, just hours before voting was to conclude, a "fatal accident" shut down traffic on Interstate 275 near Cincinnati. (Order, R. 1, PageID 1.) An "oral complaint" then came before the Southern District of Ohio "requesting that the polling locations within the [affected] counties of Butler, Clermont, Hamilton and Warren" remain open for an additional hour. (*Id.*) The district court, concerned that voting in those four counties would be adversely impacted, granted the request and ordered the Ohio Secretary of State to "keep th[ose] polling locations . . . open until 8:30 p.m." (*Id.*) He obliged.

The primary election has long since come and gone. Consider these ensuing events: (1) the provisional ballots at issue have been willingly counted by the County Election Boards; (2) the Secretary of State has disavowed any desire to invalidate those ballots; (3) extended voting had no effect on the outcome of any race; and (4) the election result has been conclusively certified under state law, *see* Ohio Rev. Code § 3513.22(A). What is more, there is no real suggestion that anyone's "fundamental political right to vote" was trammeled, or any redressable form of harm was done to the "integrity of [the state's] election process." *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (internal quotation marks omitted). Yet nearly a month after the fact, the Secretary of State filed this appeal. (Notice of Appeal, R. 8, PageID 57.)

Now pause to ask the following question: Is there an *extant* "case" or "controversy"? U.S. Const. art. III, § 2. Though the Secretary of State seeks review of the district court's actions on the merits, "[m]oot questions require no answer." *Missouri, Kansas & Texas R. Co. v. Ferris*, 179 U.S. 602, 606 (1900). Article III, that is, "requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

Beyond that general rule, courts possess wide latitude "to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 585. For instance, in *Arizonans for*

*Official English v. Arizona*, 520 U.S. 43 (1997), the Supreme Court bypassed a challenge to the appellants' standing—despite having "grave doubts" on the matter—and instead "resolve[d] the question whether there remain[ed] a live case or controversy." *Id.* at 66–67. That move was acceptable, the Court reasoned, because both questions concerned "the Article III jurisdiction of [the reviewing court] and the courts below, not . . . the merits of the case." *Id.* at 67; *see also Burke v. Barnes*, 479 U.S. 361, 363–64 (1987) (pretermitting issue of congressional standing and dismissing on mootness grounds).

I would do just that. As *amica* has persuasively argued, the issues presented are not live, nor is there any legally cognizable interest in the outcome of this case. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016); *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 429 (6th Cir. 2013) ("Because the preliminary injunction here expired by its terms . . . , a challenge to its issuance is moot unless a recognized exception applies."). And the Secretary, moreover, confesses that his "sole motivation for pressing this appeal is to ensure that such an order never happens again," an admission that seems to solicit an advisory opinion. (Appellant's Br. at 22.) *Cf. United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 571 (7th Cir. 1987) (observing that the desire to "gain a useful precedent to brandish . . . cannot prevent a case from becoming moot").

But the parties part ways in answering the ensuing question: Does this case fall within the exception for wrongs "capable of repetition, yet evading review"? *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). That doctrine only applies in "exceptional situations," *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), where (1) the issue's life-span is "in its duration too short" to be fully litigated before the usual appellate process is complete, and (2) there exists a "reasonable expectation" or a "demonstrated probability" that the same parties will once again be involved in the same dispute, *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).

The majority thinks that the mootness inquiry is not "free from doubt." *Ante*, at 6. I disagree. In my view, neither prong of the exception is satisfied. First, the Secretary's challenge to the district court's order could have easily been resolved through a "traditionally live controversy" prior to the certification of the election results. *See Honig v. Doe*, 484 U.S.

305, 336 (1988) (Scalia, J., dissenting). True, "[c]hallenges to election laws" usually satisfy the evading-review prong, *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005), but the conditions for application of that "relaxed" standard do not exist here. Indeed, the Secretary purposely declined to seek reconsideration, an emergency stay, or expedited review of the injunctive order—precisely because the "provisional ballots did not change the outcome of any race." (Appellant's Br. at 31.) Second, the Secretary's speculation regarding the capable-of-repetition prong does not amount to "evidence creating a reasonable expectation" that this unusual confluence of events—a fatal accident that closed a major highway artery, just hours before an election—can reasonably be expected to recur. *See Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 187 (1979); *see also Lyons*, 461 U.S. at 109.

The majority likewise resolves this case on a threshold jurisdictional issue. From the majority's vantage, the district court lacked jurisdiction because "there [was] no plaintiff with standing" below. *Ante*, at 5. I express no opinion on that score. But in the end, my disagreement with the majority is one of perspective: if mootness is "the doctrine of standing set in a time frame," Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973), then I elect to resolve this appeal in the present, not the past. I would simply vacate the district court's order and remand with directions to dismiss the case as moot. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990).

For these reasons, I concur in part and dissent in part.