**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0509n.06

Case Nos. 17-4041, 18-3631

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 15, 2018

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RUSSELL KISER, D.D.S., M.S. | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| HARRY KAMDAR, Board Executive | ) | OHIO |
| Director; MARYBETH D. SHAFFER; | ) | |
| CONSTANCE F. CLARK; ASHOK DAS; | ) | |
| MARTIN CHAMBERS; PATRICIA | ) | |
| GUTTMAN; CHARLES SMITH; BILL | ) | |
| ANDERSON; BURTON JOB; KUMAR | ) | |
| SUBRAMANIAN; MICHAEL GINDER; | ) | |
| JEANNE HUBER; SUSAN JOHNSTON; | ) | |
| ANN AQUILLO, | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    BATCHELDER, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge.  What is worse than a root canal?  Apparently, Ohio dental regulations.  These rules prevented dentists like Dr. Russell Kiser from providing both general dentistry and endodontic (i.e., root canal) services at the same time.  So Dr. Kiser challenged the regulations in federal court.  But, because a state agency rescinded the prohibition during litigation, the district court dismissed Dr. Kiser's case as moot.  We affirm.

I.

Dr. Russell Kiser works as a licensed dentist in Ohio. Because he completed a postdoctoral education program in endodontics, Dr. Kiser offers specialty services in root canal work. He also wants to provide general dental services, but Ohio regulations previously prevented him from doing so. These regulations created two categories of dental professionals: "specialists" and "general dentists." *See* Ohio Admin. Code 4715-5-04(A). And "specialists" like Dr. Kiser had to limit their practices to their particular specialty. Specialists could not simultaneously offer services in both their specialty and more general dentistry. In fact, when Dr. Kiser tried to offer both, the Ohio State Dental Board—charged with regulating dental practices within the state, *see* Ohio Rev. Code Ann. § 4715.02—sent him a letter threatening action if he continued to both practice and advertise outside the scope of endodontics.

So Dr. Kiser brought suit challenging the regulation. Amidst litigation, however, the Board revoked the prohibition. Specialists no longer have to limit their practice to their specialty. Accordingly, the district court dismissed Dr. Kiser's complaint as moot. Dr. Kiser now appeals. We review the district court's dismissal de novo. *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003).

II.

The federal judiciary has the power to resolve only "Cases" and "Controversies." U.S. Const. art. III. This means that judges can only adjudicate real-world disputes. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013). And the mootness doctrine reinforces this limitation by ensuring that an actual dispute exists throughout litigation. *Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016); *accord Powell v. McCormack*, 395 U.S. 486, 496 (1969). An actual dispute does not exist when a party requests relief that would have no effect in the real

world. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). Take a simple example. A plaintiff sues requesting only an injunction that a grocery store honor its discount coupons. But before the court rules on the lawsuit, the grocery store accepts those coupons. Because the store accepted the coupons, no real-world dispute exists anymore. The plaintiff got exactly what he wanted without judicial intervention, making the case moot.

Dr. Kiser is no different than our hypothetical plaintiff. His main complaint was about the regulation that prevented a specialist like him from practicing general dentistry (the so-called "Exclusivity Rule"). So he requested an injunction preventing the Board from enforcing the Exclusivity Rule. After he filed suit, however, the Board repealed the Exclusivity Rule, which meant Dr. Kiser could now offer both endodontic and general dentistry services. Accordingly, this court has nothing left to enjoin. *See Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644–45 (6th Cir. 1997) (holding that the repeal of a challenged law moots a case where the plaintiff only seeks prospective relief).

Similarly, Dr. Kiser requested a declaration that the Exclusivity Rule is unconstitutional. But a court order opining on a *repealed* regulation would have no effect in the real world. *Cf. McPherson*, 119 F.3d at 458; *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (discussing mootness when the court can "no longer . . . grant meaningful relief"). The Exclusivity Rule no longer exists. So any opinion on the matter would only be advisory—something unrelated to the resolution of an actual dispute and thus outside this court's Article III power. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Dr. Kiser argues that his case is not moot because rescinding the Exclusivity Rule only freed up his *conduct*, not his *advertising*. He states that the regulatory scheme still prevents him from advertising general dentistry services even though he can now provide those services. For

support, Dr. Kiser points to the Board's 2009 warning letter admonishing Kiser that he "can only advertise services associated with the specialty declared." R. 8-1, Pg. ID 88. But Dr. Kiser received that letter in a different regulatory world. When the Board sent Dr. Kiser that letter, endodontists could only practice endodontics. Because of this restriction, advertising anything else would have "deceive[d] or misle[d] the public." Ohio Admin. Code 4715-13-04. Now that the Board has rescinded the Exclusivity Rule, Dr. Kiser can practice both endodontics and general dentistry. Thus, advertising that he can offer both services would no longer "deceive or mislead the public." *Id.*

In his reply brief, Dr. Kiser argues that a different provision, Ohio Admin. Code 4715-13-03(E), also restricts his advertising rights. But Dr. Kiser forfeited this claim by waiting until his reply brief to raise it. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

Though Dr. Kiser's current rights are not at stake, he nonetheless argues that his case is not moot because the Board may reinstate the repealed regulations. Generally, when a defendant voluntarily ceases his challenged actions amidst litigation, that change in conduct will not make the case moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The defendant could "return to his old ways" as soon as litigation ends. *Id.* (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)). So in this case, the Board, as the defendant, must make it "absolutely clear" that it will not return to its old ways. *Id.* Otherwise, the case is not moot.

The Board points to several facts to demonstrate that the Rule will not be reinstated.[1] First, the Board has expressed no desire to reenact the Exclusivity Rule and has, in fact, represented just the opposite.[2] *See Ky. Right to Life*, 108 F.3d at 645 (finding a claim moot in part because the "record . . . [was] devoid of any expressed intention . . . to reenact the prior . . . scheme"); *cf. Aladdin's Castle*, 455 U.S. at 289 n.11 (finding that a city's repeal of an ordinance did not moot a case when the city announced an intention to reenact the ordinance after litigation). The Board also demonstrated how rescission of the Rule followed a national trend. The American Dental Association had a similar exclusivity rule in its Code of Professional Conduct. But the ADA rescinded that rule at the same time that the Board excised its own. The Board is unlikely to buck the trend and reinstate a rule that has lost nationwide approval. And finally, in case we had any lingering doubts, the Board has ordered staff not to enforce the old Exclusivity Rule or "take[] action against specialists practicing outside the scope of their specialty." R. 36-1, Pg. ID 279–80.

Even if some Board members wanted to reenact the Exclusivity Rule, the rigorous process that a rule change requires makes reenactment unlikely. *See, e.g.*, Ohio Rev. Code Ann. § 119.03. To begin, the Board's Law and Rules Committee must internally deliberate and recommend any change. Then the entire Board votes on the recommended amendment. If the vote passes, the Board next publishes the amendment and holds a hearing for public comment. *Id.* § 119.03(A).

---

[1] Dr. Kiser argues that, when considering whether the Board has met its burden, we should not give the Board any special deference. Generally, when a legislature revokes a statute at issue in a case, courts give that legislative action "more solicitude . . . than similar action by private parties." *Ammex, Inc.*, 351 F.3d at 705 (quoting *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)). This court has done the same with administrative actions. *See Mosley*, 920 F.2d at 415; *see also Fowler v. McGinnis*, 37 F.3d 1498 (6th Cir. 1994) (table). Yet Dr. Kiser contends that "agency administrative practices are simply less reliable bases for federal court obeisance." Appellant's Br. 22. Because the Board meets its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again" without applying any solicitude, we need not decide that issue. *Laidlaw*, 528 U.S. at 189 (internal quotation marks and alteration omitted).

[2] Although Dr. Kiser further argues that the district court should have allowed discovery on the mootness issue, he forfeited this issue below by not objecting in a timely fashion. *See* Fed. R. Civ. Pro. 72(a). Dr. Kiser concedes as much on appeal.

Afterward, the Board submits the amendment to Ohio's Joint Committee on Agency Rule Review for final approval. The rescission of the Exclusivity Rule went through this exact process, and any subsequent attempt to put that Rule back into place would have to undergo the same arduous steps. Given these combined facts, the Board has demonstrated with sufficient clarity that it will not reenact the regulatory scheme.

## III.

Dr. Kiser also argues that he is entitled to attorney's fees as a "prevailing party." In certain civil rights cases, the "prevailing party" may recover "reasonable attorney's fee[s] as part of the costs." 42 U.S.C. § 1988(b). And a "prevailing party" is typically "one who has been awarded some relief by [the] court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). Because Dr. Kiser did not obtain any relief from the judiciary, the district court denied his motion for attorney's fees.

But Dr. Kiser makes a new argument on appeal. He states that the Board engaged in "quasi-judicial conduct" when it directed its staff not to enforce the Exclusivity Rule. Such conduct, Dr. Kiser contends, constituted a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. Since this "quasi-judicial conduct" occurred after Dr. Kiser filed his lawsuit, he claims that it occurred as a direct result of litigation and thus makes him eligible for attorney's fees. But Dr. Kiser did not advance this issue before the district court below, so he has forfeited it on appeal. *United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003). And even if he had not forfeited this argument, it is meritless. Broad policy decisions by agencies are executive in nature, not judicial. *See Déjà Vu of Cincinnati, LLC v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 783 (6th Cir. 2005) (en banc) ("Proceedings of an administrative agency are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence."

(internal quotation marks omitted)).  Therefore, if anything, the Board's decision was quasi-executive, not quasi-judicial.  Accordingly, the district court rightly denied Dr. Kiser's request for attorney's fees.

We affirm.