RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JAMES M. PERNA,

*Plaintiff-Appellant*,

*v.*

No. 19-1965

HEALTH ONE CREDIT UNION; NATIONAL CREDIT
UNION ADMINISTRATION; NATIONAL CREDIT UNION
ADMINISTRATION BOARD,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-cv-10001—Arthur J. Tarnow, District Judge.

Argued:  February 6, 2020

Decided and Filed:  December 21, 2020

Before:  SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Cindy Rhodes Victor, KUS RYAN, PLLC, Auburn Hills, Michigan, for Appellant.
Emily C. Palacios, MILLER, CANFIELD, PADDOCK & STONE, P.L.C., Ann Arbor,
Michigan, for Appellees.  **ON BRIEF:**  Cindy Rhodes Victor, KUS RYAN, PLLC, Auburn
Hills, Michigan, for Appellant.  Emily C. Palacios, Brian Schwartz, MILLER, CANFIELD,
PADDOCK & STONE, P.L.C., Ann Arbor, Michigan, for Appellees.

———————————

**OPINION**

———————————

MURPHY, Circuit Judge.  In recent decades the Supreme Court has cautioned courts not to mistake a forfeitable claims-processing rule (such as a rule that a party assert a claim within a specific time) for a nonforfeitable jurisdictional limit that deprives the court of the power to adjudicate the claim.  *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848–50 (2019).  Yet this cautionary note must not be overread: It does not permit us to ignore a clear jurisdictional limit that Congress has, in fact, imposed.  *Id.* at 1850.  And here, James Perna seeks to litigate a claim that Congress has "clearly" deprived us of jurisdiction to entertain.  *Id.* (citation omitted).

Perna worked for Health One Credit Union, a federally insured but state-chartered credit union.  A state regulator found that Health One had become financially unsound and appointed the National Credit Union Administration Board, a federal entity, as Health One's liquidator.  The Board terminated Perna's employment.  Perna has since sought damages in many ways, from filing a complaint with a state agency, to asserting a claim with the Board, to conducting an arbitration with an arbitration agency.  In this suit, Perna seeks to modify the arbitration award by making the Board liable on it.  But the Federal Credit Union Act provides that "no court shall have jurisdiction over" claims against covered credit unions asserted outside its exclusive framework.  12 U.S.C. § 1787(b)(13)(D).  The district court thus held that it lacked jurisdiction over Perna's suit.  We agree, although we clarify that the court should have dismissed this suit for lack of subject-matter jurisdiction, not granted summary judgment to the defendants.

I

A

A complex overlay of federal law on top of state law applies to Michigan credit unions that are federally insured.  First up is state law.  The Michigan Credit Union Act governs most credit unions operating within the state.  *See* Mich. Comp. Laws 490.101–.601.  Michigan law places primary regulatory responsibility over these entities in the Director of the Department of Insurance and Financial Services (the "Director").  *Id.* §§ 490.102(n)–(o), .201(1).  This law

includes many rules tailored to Michigan-chartered credit unions. Among them, the Director must inspect the financial health of these state credit unions every 18 months. *Id.* § 490.207(1).

When the Director concludes that a Michigan credit union "is in an unsafe or unsound condition," the Director may appoint a conservator (to manage the credit union's affairs) or ask a state court to appoint a receiver (to liquidate the credit union). *Id.* § 490.232(1). A liquidating receiver has the power to control the credit union's property, oversee its business, and ultimately dissolve the entity. *Id.* §§ 490.231(1), .233–35. Michigan law permits the Director to appoint a federal agency as the receiver, which then incorporates "the receivership procedures of the federal agency[.]" *Id.* § 490.231(2). If the Director opts to initially appoint a conservator, the conservator has the same powers as a receiver except for the liquidation power. *Id.* § 490.242(1). After the conservator has managed the credit union, the Director will decide whether to return it to normal operations or apply for a receiver to liquidate it. *Id.* § 490.245.

Next up is federal law. The Federal Credit Union Act governs federally chartered credit unions and state-chartered credit unions that participate in a federal insurance program like the well-known program for banks. *See* 12 U.S.C. §§ 1751–1795k. Federal law places primary regulatory responsibility for covered credit unions in the National Credit Union Administration, an agency managed by the National Credit Union Administration Board (the "Board"). *Id.* § 1752a(a). The Board has many oversight duties for federally chartered credit unions. *See, e.g.*, *id.* § 1766; *cf. id.* § 1771(a)(4). And once state credit unions opt to receive federal insurance, they become subject to many similar regulations. *See, e.g.*, *id.* §§ 1781(a)–(b)(2), 1785–86.

If a federally insured state credit union becomes financially insecure, the Board has the power to appoint itself as conservator or liquidating agent. *See id.* §§ 1786(h)(1), 1787(a)(3). Before taking that action, however, the Board must seek input from the credit union's state regulator. *See id.* §§ 1786(h)(2), 1787(a)(3), 1790d(l). When acting as a conservator or liquidating agent, the Board must manage the credit union and take control of its assets. *Id.* §§ 1786(h)(1), 1787(b)(2). Federal law also gives the Board the power to repudiate any of the credit union's contracts if the Board finds that they would be "burdensome." *Id.* § 1787(c).

When the Board acts as a credit union's "liquidating agent," it has the power to resolve "claims" against the credit union in accordance with a statutory framework. *Id.* § 1787(b)(3)(A). Creditors have a certain period to file claims from the date that the Board gives them notice, *id.* § 1787(b)(3)(B), and the Board may approve or deny them, *id.* § 1787(b)(5)(B), (D). When the Board denies a claim, the claimant has various routes to judicial review. *Id.* § 1787(b)(6)(A)(ii), (7)(A). Outside the specified routes, though, "no court shall have jurisdiction over" claims seeking the credit union's assets or challenging its actions. *Id.* § 1787(b)(13)(D).

B

This case concerns the now-defunct Health One Credit Union, a Michigan-chartered credit union that was federally insured. Initially hired in 1971, James Perna served as Health One's general manager for over 40 years. Perna signed a three-year employment agreement with Health One in 2009. This agreement contained an arbitration clause requiring Health One and Perna to arbitrate any disputes arising out of it. The parties twice renewed the contract, and it was set to expire at the end of 2015.

But Perna did not make it through that term. On May 16, 2014, the Michigan Director concluded that Health One had been operating in an "unsafe and unsound condition." *See* Mich. Comp. Laws §§ 490.232(1), .241(1). The Director appointed the federal Board as Health One's conservator. The same day, the Board decided that Health One's contract with Perna was burdensome, repudiated his contract, and terminated his employment. *See* 12 U.S.C. § 1787(c)(1).

Health One's financial condition continued to deteriorate, so the Director asked a state court to appoint a receiver. In December 2014, the court issued an order appointing the Board as receiver. (Technically, the court appointed the National Credit Union Administration rather than its Board, as the court glossed over the distinction between this federal agency and its managing entity. 12 U.S.C. § 1752a(a). But neither party suggests that this naming difference matters to any issue in this case.) The same day that the Board was appointed as receiver, it sold Health One's assets to the New England Federal Credit Union.

C

After the Board repudiated Perna's contract, he pursued many routes seeking compensation from Health One or the National Credit Union Administration.  All have come up short.

*First*, in October 2014, Perna filed a claim for unpaid benefits and expenses with the Michigan Department of Licensing and Regulatory Affairs.  This agency dismissed Perna's claim without considering the merits.  It reasoned that Perna's employment contract directed him to arbitrate disputes, and the agency's regulations required it to dismiss claims subject to arbitration.

*Second*, in May 2015, Perna submitted a claim to the Board under the claims-processing rules that apply when the Board acts as a credit union's liquidating agent.  12 U.S.C. § 1787(b)(5).  Perna requested the benefits and expenses that he had sought with the state agency and the unpaid wages for the remainder of his contract term.  The Board denied his claim as untimely because its notice to Health One's creditors required them to file claims by March 2015.  *Id.* § 1787(b)(5)(C)(i).  Perna moved for reconsideration, arguing that he fell within a safe harbor to this time limit for creditors who lacked notice.  *Id.* § 1787(b)(5)(C)(ii).  In February 2016, the Board denied Perna's claim because he had received actual notice of its appointment.

*Third*, over two years later in April 2018, Perna invoked his contract's arbitration clause to file a contract claim for unpaid wages and benefits with the American Arbitration Association.  He named Health One and the National Credit Union Administration as defendants.  Counsel for the defendants refused to participate.  Because counsel had been notified, an arbitrator concluded that the arbitration could proceed.  Perna and a former Health One board member testified at a hearing.  The arbitrator found that Health One's firing of Perna had been "without cause" and triggered Perna's right to severance pay under the contract.  The arbitrator awarded him $315,645.02.  Yet this was a Pyrrhic victory.  The arbitrator also found that this decision could bind only Health One (a defunct entity), not the National Credit Union Administration.  He reasoned that the Board's role as Health One's conservator at the time of Perna's firing had not made it a substitute party to the contract.

*Fourth*, in November 2018, Perna sued Health One and the National Credit Union Administration in state court, relying on state arbitration laws and court rules. Perna sought to confirm its award against Health One and modify the award by making the National Credit Union Administration subject to it. The defendants removed the suit to federal court, and the district court added the Board as a defendant.

The district court granted summary judgment to the defendants. *Perna v. Health One Credit Union*, 2019 WL 3081068, at \*6 (E.D. Mich. July 15, 2019). It gave both a jurisdictional reason and a merits reason. As for jurisdiction, it relied on the claims-processing rules in 12 U.S.C. § 1787(b). Section 1787(b) made clear that, aside from its rules, courts lacked jurisdiction over any claim for payment from a credit union's assets. *Id.* § 1787(b)(13)(D). The court found Perna's suit to be such a claim. *Perna*, 2019 WL 3081068, at \*3. As for the merits, Perna sought to modify the arbitration award on the ground that the arbitrator mistakenly ruled that the Board did not become Health One's successor. Even if the arbitrator was wrong, the court reasoned, this mistake would not provide a basis to overturn his decision. *Id.* at \*4. After the court denied Perna's motion for reconsideration, Perna appealed.

## II

At the outset, we must express doubt over whether the Board could remove this suit under the statutes on which it relied. Although neither side raised an objection to removal, we have an independent duty to assure ourselves of the district court's jurisdiction. *See In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 893–94 (6th Cir. 2020); 14C Charles Alan Wright et al., *Federal Practice & Procedure* § 3739.1, at 775–76 (4th ed. 2018). A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The Board's notice of removal relied on three jurisdictional statutes: a statute for suits involving the Board, 12 U.S.C. § 1789(a)(2), the federal-question statute, 28 U.S.C. § 1331, and the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). It is debatable whether these statutes apply here.

Start with the Board's specific jurisdictional statute. It contains a broad grant of jurisdiction to district courts for suits involving the Board. 12 U.S.C. § 1789(a)(2). It next allows the Board to remove any such suit to federal court. *Id.* But it then includes an exception to this removal power: A state "suit to which the Board is a party in its capacity as liquidating agent of a State-chartered credit union and which involves only the rights or obligations of members, creditors, and such State credit union under State law shall not be deemed to arise under the laws of the United States." *Id.* Perna's suit may well fall within this exception. The Board is a party to Perna's suit "in its capacity as liquidating agent of" Health One. Perna's suit next might involve only "rights" and "obligations" under "State law" because he alleges a right to modify the arbitration award under Michigan arbitration law. Perna also might be characterized as a "creditor" of Health One in the word's "broad sense," which could cover anyone who asserts "any legal liability upon a contract" against another. *Black's Law Dictionary* 332 (5th ed. 1979). On the other hand, the word "creditor" could be defined narrowly as a "person to whom a debt is owing," *Black's*, *supra*, at 332, a definition that might exclude a claimant like Perna who has yet to prove his claim. *Cf. Wright v. Oakland Mun. Credit Union*, 2011 WL 2437370, at *3 (N.D. Cal. June 17, 2011); *see also Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005).

Perhaps the federal-question statute provides an easier path for removal? No. It gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is not clear why Perna's suit "arises under" federal law. The Board argues that the suit meets this element because Perna relies on the state court's receivership order as the basis for its liability, and that order authorized the Board to use its powers under the Federal Credit Union Act. "Under the longstanding well-pleaded complaint rule, however, a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). Here, Perna's suit is based on *state* arbitration law. And even if the Board seeks to invoke its federal powers as a defense, such a defense would generally not show that a suit arises under federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10–11 (1983).

Maybe the federal-officer removal statute allows for easier answers?  No again.  It says that "[t]he United States or any agency thereof" may remove any "civil action" that is brought against it in state court "relating to any act under color of such office."  28 U.S.C. § 1442(a)(1). The Board argues that it may invoke this statute because the statute covers all federal agencies. But things are not so simple.  If the Board is correct that it may rely on § 1442(a)(1) whenever 12 U.S.C. § 1789(a)(2)'s exception to removal would prevent the Board from removing a suit, what is left of that exception?  Anytime a plaintiff relied on the exception, the Board could simply remove the suit under this general removal statute.  But the specific typically governs the general.  So perhaps § 1789(a)(2) should be read as the Board's exclusive party-based route to removal.  *Cf. Preferred Care of Del., Inc. v. Estate of Hopkins*, 845 F.3d 765, 769 (6th Cir. 2017).

In the end, we only highlight these jurisdictional issues for future cases.  The district court found that it lacked jurisdiction over Perna's suit for a more obvious reason: Apart from its comprehensive review scheme, the Federal Credit Union Act divests all courts of jurisdiction over claims involving the assets of covered credit unions.  And we have "discretion to address jurisdictional issues 'in any sequence we wish.'"  *In re 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (citation omitted); *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–85 (1999); 14C Wright, *supra*, § 3739.1, at 796–97.  So we may safely leap ahead to the district court's jurisdictional rationale without resolving these preliminary jurisdictional questions.

III

A

After the savings and loan crisis of the 1980s, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183.  This Act amended the Federal Credit Union Act (among other laws) by creating an exclusive framework through which creditors must pursue their claims against covered defunct credit unions.  *See* 103 Stat. at 530–37 (adopting 12 U.S.C. § 1787(b)).  This framework gets triggered when the Board acts as the liquidating agent of a "closed credit union[.]"  12 U.S.C. § 1787(b)(3)(B).  The

Board must "publish a notice to the credit union's creditors" and mail a similar notice to known creditors requiring them to present their claims to the Board within a certain time (which can be no shorter than 90 days from the date of the notice). *Id.* § 1787(b)(3)(B)(i), (C). Once a creditor submits a claim to the Board, the Board has 180 days to resolve it. *Id.* § 1787(b)(5)(A)(i), (B), (D). If a creditor has already sued the credit union at the time that the Board becomes its liquidating agent, the Board may also ask the relevant court for a 90-day stay. *Id.* § 1787(b)(12).

When the Board denies a claim, a creditor may choose between two avenues of further review. The creditor may request an administrative hearing with the Board and obtain review of the Board's final decision under the Administrative Procedure Act. *Id.* § 1787(b)(6)(A)(ii), (7)(A). Or the creditor may skip this step and immediately bring suit (or continue a prior suit) on the claim. *Id.* § 1787(b)(6)(A)(ii). The creditor must choose either path quickly: It must request review within 60 days from the sooner of the Board's denial of the claim or the end of the 180-day period that the Board had to resolve it. *Id.* § 1787(b)(6)(A)(i)–(ii). If the creditor pursues neither path within that period, "the claim shall be deemed to be disallowed . . . as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." *Id.* § 1787(b)(6)(B). (The law separately establishes an expedited review process for creditors that have security interests in the credit union's assets. *Id.* § 1787(b)(8)(C).)

Section 1787(b) creates the exclusive framework for judicial review. A subparagraph divests courts of jurisdiction to consider claims against the credit union in other ways:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or
>>
>> (ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent.

*Id.* § 1787(b)(13)(D). Without this subparagraph, § 1787(b)'s framework might resemble the type of exhaustion mandate that the Supreme Court has recently treated as a nonjurisdictional

(and forfeitable) claims-processing rule. *See, e.g.*, *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848–50 (2019); *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 511–12 (2014). But § 1787(b)(13)(D)'s text shows that it is no mere claims-processing rule. Congress has "clearly" established that this restriction counts "as jurisdictional" by expressly labeling it as such. *Fort Bend County*, 139 S. Ct. at 1850 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006)).

Caselaw in an analogous context supports our jurisdictional reading of § 1787(b)(13)(D). The Financial Institutions Reform, Recovery, and Enforcement Act created a similar claims-processing framework for liquidating banks administered by the Federal Deposit Insurance Corporation ("FDIC"). 12 U.S.C. § 1821(d)(3)–(8). This similar banking framework contains a nearly identical provision that deprives courts of "jurisdiction over" certain claims involving liquidating banks. *Id.* § 1821(d)(13)(D). And many circuit courts have read § 1821(d)(13)(D)'s text as limiting their subject-matter jurisdiction. *See Dernis v. Amos Fin.*, 701 F. App'x 449, 454–56 (6th Cir. 2017); *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 385–86 (6th Cir. 2008); *see also MTB Enters., Inc. v. ADC Venture 2011-2, LLC*, 780 F.3d 1256, 1258–59 (9th Cir. 2015); *Miller v. FDIC*, 738 F.3d 836, 840–47 (7th Cir. 2013); *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013); *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279–81 (3d Cir. 2013); *Home Cap. Collateral, Inc. v. FDIC*, 96 F.3d 760, 762–64 (5th Cir. 1996); *Tillman v. Resolution Tr. Corp.*, 37 F.3d 1032, 1036 (4th Cir. 1994); *Astrup v. Resolution Tr. Corp.*, 23 F.3d 1419, 1421 (8th Cir. 1994) (per curiam). The same is true of the similar provision in this case. *Compare* 12 U.S.C. § 1787(b)(13)(D), *with id.* § 1821(d)(13)(D).

Does Perna's claim fall within this jurisdiction-stripping provision? The provision's first clause fits Perna's suit like a glove. *Id.* § 1787(b)(13)(D)(i). Was the Board "appointed liquidating agent" of Health One? *Id.* Yes, it was appointed in December 2014. Is Perna's suit an "action for payment from" the "assets" of Health One? *Id.* Yes, Perna alleges that Health One owes him $315,645.02 in severance pay and related damages because it breached his contract by firing him. And Perna sued the National Credit Union Administration because it took title to the Health One assets that he seeks. *Cf. Acosta-Ramirez*, 712 F.3d at 21.

Indeed, Perna himself believed at one time that § 1787(b)'s exclusive claims-processing framework applied to his claim against Health One.  After all, he asserted a claim with the Board under that very framework in May 2015.  In February 2016, the Board denied his claim because it was untimely under § 1787(b)(5)(C).  If Perna sought to pursue this claim further, he could have requested administrative review or filed suit within 60 days.  12 U.S.C. § 1787(b)(6)(A)(ii).  But Perna did neither.  He instead waited two years to pursue arbitration.  That choice came too late.  *Id.* § 1787(b)(6)(B); *cf. Miller*, 738 F.3d at 845–46.  And arbitration was the wrong forum.  *See* 12 U.S.C. § 1787(b)(6)(A)(ii); *cf. MTB Enters.*, 780 F.3d at 1259.  Because Perna pursues his claim against Health One in a manner that does not fall within § 1787(b)'s exclusive framework, the district court lacked "jurisdiction" to adjudicate the claim.  12 U.S.C. § 1787(b)(13)(D).

B

Perna's response?  He does not dispute that § 1787(b)(13)(D) would bar his claim if Health One were covered by § 1787(b)'s framework.  But he argues that this framework applies only when the Board liquidates a *federally chartered* credit union, not when it liquidates a federally insured *state-chartered* credit union like Health One.  Perna is mistaken.

Section 1787(b)(13)(D) covers all claims seeking "the assets of *any* credit union for which the Board has been appointed liquidating agent."  *Id.* § 1787(b)(13)(D)(i) (emphasis added).  Health One is such a credit union.  And many surrounding provisions confirm that § 1787(b)'s framework applies when the Board acts as the liquidating agent of an insured state-chartered credit union.  To name a few, § 1787(a)(3) indicates that the Board "may close any credit union for liquidation," but requires it to cooperate with state regulators "in the case of a *State-chartered* insured credit union[.]"  12 U.S.C. § 1787(a)(3) (emphasis added).  Similarly, § 1786(h) allows the Board to act as a conservator of an insured state-chartered credit union in certain circumstances.  *Id.* § 1786(h)(1)(A).  This subsection later indicates that, "in the case of an insured State-chartered credit union," the Board may run the business as conservator "until such time" "as such credit union is liquidated in accordance with *the provisions of section 1787* of this title."  *Id.* § 1786(h)(5)(C) (emphasis added).  When, by contrast, subsections in § 1787 apply specifically to a "Federal credit union," they say so expressly.  *See* 12 U.S.C. § 1787(a)(1)(A), (a)(2).

For his contrary view, Perna relies on two subsections in § 1787. He first cites § 1787(j), which directs the Board to accept an appointment as the liquidating agent of an insured state-chartered credit union when state regulators ask it to do so. *Id.* § 1787(j). The subsection gives the Board "all the rights, powers, and privileges granted by State law to a liquidating agent of a State-chartered credit union." *Id.* According to Perna, when the Board accepts an appointment from state regulators (instead of appointing itself), the Board possesses only these state-law powers, not its normal federal powers. In other words, Perna reads § 1787(j) to *contract* the Board's authority. Yet the subsection could just as easily be read to *enlarge* that authority: It gives the Board both its normal federal powers and any additional state-law powers. Regardless, this argument would not help Perna. Michigan law incorporates "the receivership procedures of the federal agency" when it gets appointed as receiver. Mich. Comp. Laws § 490.231(2). Even under Perna's reading, then, § 1787(b)'s procedures apply in this case.

Perna next cites § 1787(c). It allows the Board to repudiate a contract that a credit union has entered. *Id.* § 1787(c)(1). Perna suggests that § 1787(b)'s claims-processing framework does not apply to claims brought under § 1787(c)(3) for damages from such a repudiation. Yet § 1787(c)(3) merely limits the damages available to those seeking redress for a repudiated contract. It nowhere exempts breach-of-contract claims from § 1787(b). Caselaw in the analogous banking context supports this view. That statutory scheme also gives the FDIC the ability to repudiate the contracts of liquidating banks. 12 U.S.C. § 1821(e). And another court has held that § 1821(d)'s claims-processing framework applies to breach-of-contract claims arising from a repudiation under § 1821(e). *See Battista v. FDIC*, 195 F.3d 1113, 1117–19 (9th Cir. 1999); *cf. Off. & Pro. Emps. Int'l Union, Local 2 v. FDIC*, 27 F.3d 598, 600 (D.C. Cir. 1994).

Unable to rely on § 1787, Perna turns to nearby sections. He starts with the Board's removal provision discussed above: 12 U.S.C. § 1789(a)(2). As noted, its exception excludes from the Board's removal power some state suits against the Board that involve only state-law issues. When would this provision ever allow plaintiffs to litigate in state court, Perna asks, if insured state-chartered credit unions were subject to § 1787(b)'s framework for liquidating credit unions? Fair point. But our caselaw in the analogous banking context provides the answer.

Oftentimes a party might file a suit before the Board gets appointed receiver and so before § 1787(b)'s claims-processing rules get triggered. In that scenario, the preexisting court continues to have jurisdiction even after the appointment (subject to any potential stay). *Id.* § 1787(b)(12); *see In re Lewis*, 398 F.3d 735, 739–46 (6th Cir. 2005); *Holmes Fin. Assocs., Inc. v. Resolution Tr. Corp.*, 33 F.3d 561, 566–69 (6th Cir. 1994). We thus need not depart from § 1787(b)'s text to give meaning to § 1789(a)(2)'s exception to the Board's authority to remove state-law suits.

Perna also cites a provision that allows a federal credit union to become a state-chartered credit union, in which case the state-chartered credit union "shall no longer be subject to any of the provisions of this chapter." 12 U.S.C. § 1771(a)(4). This language shows that a state-chartered credit union is not *automatically* subject to the Federal Credit Union Act. But once such a credit union decides to obtain federal insurance (as Health One did), it becomes subject to the federal laws that govern *federally insured* state credit unions, including § 1787(b).

Running out of legal points, Perna makes two factual points. He notes that his suit challenges the Board's action in repudiating his contract and that the Board took this action when it was Health One's *conservator*, not its *receiver*. That is beside the point. When the Board was later appointed as the liquidating agent, it triggered § 1787(b)'s claims-processing framework. And this framework applies to all claims against a defunct credit union whether or not the claim arose before the Board was appointed as the credit union's liquidating agent. *See, e.g.*, 12 U.S.C. § 1787(b)(3)(B)–(C); *cf. Tellado*, 707 F.3d at 280–81. Nothing in the text suggests that the framework applies only to claims accruing after that appointment.

Perna also argues that the Board did not send him the statutorily required notice triggering the deadline to file a claim under § 1787(b). *See* 12 U.S.C. § 1787(b)(5)(C)(ii). Maybe not. But he should have litigated his alleged lack of notice through the procedures that § 1787(b) permits—by suing within 60 days. *Id.* § 1787(b)(6)(A)(ii). Section 1787(b)(13)(D) prevents him from raising this challenge to the Board's decision years after the fact.

* * *

We conclude with two loose ends. The first: the merits. Perna spends much of his briefing explaining why the district court should have confirmed and modified the arbitrator's award under Michigan law. Because we lack subject-matter jurisdiction over Perna's suit, however, we cannot consider his merits arguments. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). To do so would carry us "beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." *Id.*

The second: the proper judgment. When a district court finds that it lacks jurisdiction over a case that has been removed from a state court, Congress has instructed that "the case shall be remanded" to the state court. 28 U.S.C. § 1447(c). But our finding that the district court lacks jurisdiction also means that the state court does too. The Federal Credit Union Act's jurisdiction-stripping provision indicates that "no court," including a state court, has "jurisdiction" over claims subject to its framework. 12 U.S.C. § 1787(b)(13)(D). Because a remand would be futile, should we dismiss the suit outright? In another context, the Supreme Court has expressed skepticism over whether § 1447(c)'s remand requirement contains such a "futility" exception. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991). Circuit courts have thus often rejected these sorts of futility arguments. *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012) (citing cases); 14C Wright, *supra*, § 3739.1, at 799–800. We, for example, remanded a suit to state court after we agreed with the defendants that the plaintiffs lacked Article III standing. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496–97 (6th Cir. 1999). And there is something "anomalous" about the Board removing this suit to federal court on the ground that the court had jurisdiction and then arguing to the very same court that it lacks jurisdiction. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002).

Nevertheless, we have also held that "we should simply dismiss" a removed case when our holding conclusively establishes not just that we lack jurisdiction but also that the state court lacks jurisdiction as well. *Estate of West v. U.S. Dep't of Veterans Affs.*, 895 F.3d 432, 435 (6th Cir. 2018). In two cases involving the analogous banking regime, we upheld district-court decisions that refused to remand a suit previously removed by the FDIC because "no court had

jurisdiction" over the suit. *Dernis*, 701 F. App'x at 454; *see Village of Oakwood*, 539 F.3d at 377, 384–87. Other courts have likewise refrained from ordering a remand when finding a lack of jurisdiction under that analogous banking regime. *See, e.g.*, *Seaway Bank & Tr. Co. v. J&A Series I, LLC*, 962 F.3d 926, 932 (7th Cir. 2020); *Acosta-Ramirez*, 712 F.3d at 17, 21; *Tellado*, 707 F.3d at 278, 281; *Tillman*, 37 F.3d at 1034, 1036. And Perna does not argue that we should remand to state court (rather than dismiss) if we conclude that we lack jurisdiction. Given these prior decisions and Perna's failure to object to a dismissal, we will dismiss (not remand) this case. Yet we remind litigants that state tribunals are adequate venues for resolving federal questions. *See Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990); U.S. Const. art. VI, cl. 2.

That said, the district court did not dismiss this suit for lack of jurisdiction; it granted summary judgment to the defendants. A summary-judgment motion generally "is an inappropriate vehicle for raising a question concerning the court's subject-matter jurisdiction[.]" 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2713, at 269 (4th ed. 2016). That motion seeks a ruling on the merits, not a ruling that the court lacks the power to resolve the merits. *See Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam); *see also, e.g.*, *Hayden v. Sec'y of Dep't of Veterans Affs.*, 1999 WL 313890, at *1 (6th Cir. May 4, 1999); *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 (9th Cir. 1982). A party challenging the court's jurisdiction should instead file a motion to dismiss for lack of jurisdiction, a motion that may be filed at any time. Fed. R. Civ. P. 12(b)(1), (h)(3). But the district court's labeling error was harmless, and we may modify the judgment to clarify its nature. 28 U.S.C. § 2106; *see also, e.g.*, *Ednacot v. Mesa Med. Grp., PLLC*, 790 F.3d 636, 640 (6th Cir. 2015); *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir.1985) (per curiam).

In sum, we agree with the district court that it lacked subject-matter jurisdiction. But we modify its judgment from a grant of summary judgment to a dismissal for lack of subject-matter jurisdiction. As modified, we affirm.