RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

CARRIE DAVIS,

                    *Plaintiff-Appellant*,

    *v.*

COLERAIN TOWNSHIP, OHIO,

                    *Defendant-Appellee*.

No. 21-3723

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:19-cv-00455—William O. Bertelsman, District Judge.

Argued: May 5, 2022

Decided and Filed: September 20, 2022[*]

Before: ROGERS, KETHLEDGE, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Jennifer M. Kinsley, KINSLEY LAW OFFICE, Cincinnati, Ohio, for Appellant. Scott A. Sollmann, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio, for Appellee. **ON BRIEF:** Jennifer M. Kinsley, KINSLEY LAW OFFICE, Cincinnati, Ohio, Matthew Miller-Novak, BARRON PECK BENNIE & SCHLEMMER CO., LPA, Cincinnati, Ohio, for Appellant. Scott Albert Sollmann, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio, for Appellee.

     MURPHY, J., delivered the opinion of the court in which KETHLEDGE, J., joined, and ROGERS, J., joined in part and in the judgment. ROGERS, J. (pp. 15–16), delivered a separate concurring opinion.

─────────────────

[*]This decision was originally filed as an unpublished opinion on September 20, 2022. The court has now designated the opinion for publication.

———————————

**OPINION**

———————————

MURPHY, Circuit Judge. Carrie Davis raises weighty First Amendment challenges to two speech restrictions issued by Colerain Township in southwest Ohio. The first restriction prohibits the public from posting "inappropriate" or "offensive" comments on the police department's Facebook page; the second prohibits the public from making "disrespectful" comments at meetings of the board of trustees. Davis argues that these restrictions have stifled public debate in a way that conflicts with Supreme Court precedent. No matter the importance of a legal question, however, we may not answer it except when necessary to decide a live "Case" or "Controversy" within the meaning of Article III of the Constitution. And Davis has not raised her free-speech claims in such a case or controversy. She has failed to show that the Facebook rule has injured her in the past or is likely to do so in the future. The Township has also repealed the meeting rule. So Davis lacks standing to litigate one of her challenges and her other challenge is moot. We thus affirm the district court's judgment for the Township, while clarifying that we reject these claims for lack of jurisdiction and so without prejudice.

I

Davis has not been shy about criticizing the Township's board of trustees and its police department. This case highlights two ways in which she has done so—through oral comments at board meetings and through written comments on the police department's Facebook page.

Davis regularly speaks during the public-participation portion of board meetings. At one meeting on an unknown date, Davis recalls that the president of the township's board chastised her that she could not speak "disrespectfully" when making comments. Davis Decl., R.19-1, PageID 67. She did not believe that her criticism had been disrespectful.

At another meeting on April 9, 2019, Davis complained about the board's hiring of a finance director. She thought that the board had engaged in cronyism because the chosen candidate had been a trustee's friend and neighbor. In the course of her criticism, Davis stated: "[O]ur firefighters and police officers, they don't have bachelor's degrees, but their certifications

speak for themselves too, so you don't have to have a bachelor's degree in order to be wholly competent and qualified for your job." Davis Dep., R.25-4, PageID 520–21.

About two weeks later, the Chief of the Colerain Police Department, Mark Denney, created a post on the police department's Facebook page responding to this comment. Chief Denney stated: "Recently, a citizen commented that most of our officers do not have college degrees." Post, R.25-8, PageID 672. Denney's post went on to explain that Davis's claim had been false. According to Denney, over half of Colerain's police officers had college degrees, and this percentage substantially exceeded the percentage of the general public who held such degrees (about thirty percent). *Id.*

Davis did not dispute the accuracy of Denney's statistics. But she believed that his post had misrepresented her statement at the board meeting by implying that she had been disparaging Colerain's police (rather than its finance director). As Davis explained, she "was actually praising the police officers and he's making it appear that I am criticizing them." Davis Dep., R.25-4, PageID 508. Some people even wrote comments on Denney's post ridiculing the "citizen" who had made the statement, which confirms that it could be read in the way that Davis did.

To clarify matters, Davis alleges, she did two things. She both added a comment to Denney's post describing why his allegation had been misleading and attached a video of her board presentation to prove the point. After Davis uploaded this video, it allegedly received "likes" from members of the public. The next day, though, Davis noticed that someone had removed her comment and video from the comments section of Denney's post. (According to Denney, the Facebook page's settings made it impossible for a commenter like Davis to include videos with comments, but we must construe the facts in Davis's favor at this stage.)

Without the video to provide context, members of the public continued to criticize the "citizen" who had made the college-degree statement about the police. Davis repeatedly replied to these commenters that Chief Denney's post was inaccurate. As one example, she told a person: "this was never said. I posted the video here but the chief hid it so people can't see for themselves. It is on my page and public. I deserve an apology because he is going around

claiming I said this and the video shows I did not."  Comment, R.25-9, PageID 675.  Nobody removed Davis's replies to these commenters.

Yet the purported deletion of Davis's video was the last straw for her.  In June 2019, she sued Colerain Township under 42 U.S.C. § 1983 alleging that it had violated the First Amendment's Free Speech Clause in several ways.  As relevant now, Davis alleged two facial challenges and one as-applied challenge.

Davis first asserted a facial constitutional challenge to one of the Township's rules regulating public statements at board meetings.  First passed in 2010, these rules originally noted that "condescending comments" "would not be tolerated" and that speakers should show "respect" to the board.  2010 Rules, R.29-1, PageID 720.  The Township updated the rules in 2020.  The new version included a similar regulation that we will call the "Meeting Rule": "The use of profane, disrespectful or threatening language or gestures will not be tolerated."  2020 Rules, R.29-1, PageID 726.  In an amended complaint, Davis alleged that the Meeting Rule's ban on "disrespectful" speech violated the First Amendment by discriminating against speech based on the speaker's viewpoint.  *Cf. Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (plurality opinion).

Davis next asserted a facial constitutional challenge to one of the police department's rules regulating the comments that the public could make on its Facebook page.  In this provision (which we will call the "Facebook Rule"), the police department "reserve[d] the right to remove any comments/reviews that are inappropriate or offensive, including comments that" express "racism, hatred, slander, threats, obscenity, violence, [or] vulgarity[.]"  Facebook Rules, R.24-2, PageID 382.  Davis's amended complaint suggested that this speech restriction likewise violated the First Amendment by engaging in viewpoint discrimination.  *Cf. Iancu v. Brunetti*, 139 S. Ct. 2294, 2298–300 (2019).

Davis lastly asserted an as-applied challenge based on the (alleged) removal of her video from the Facebook page.  The police department's Facebook rules separately barred "the posting of photos or videos by anyone other than members of the Colerain Police Department[.]"  Facebook Rules, R.24-2, PageID 382.  But Davis claimed that Chief Denney had removed the video in retaliation for her criticism of him, not because of this categorical ban.

The district court granted summary judgment to the Township. *Davis v. Colerain Township*, 551 F. Supp. 3d 812, 823 (S.D. Ohio 2021). It initially rejected the Township's arguments that Davis lacked standing to bring her claims or that the claims were moot. *Id.* at 817 n.4. But it held that the rules comported with the Constitution. *Id.* at 818–23. The parties agreed that the comments section of the Facebook page and the public-participation portion of board meetings were "limited public forums," so the court applied the rules for those forums here. *Id.* at 818. It rejected Davis's challenges to the Facebook Rule on the ground that the categorical ban on posting videos was viewpoint neutral and reasonable. *See id.* at 818–19. It upheld the Meeting Rule barring disrespectful speech at board meetings on the ground that the board had not applied it to Davis in a discriminatory way. *See id.* at 819–21. It lastly rejected Davis's overbreadth and vagueness challenges. *See id.* at 821–23. Davis appealed, and we review the district court's decision de novo. *See McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).

## II

Davis asserts that the district court committed several errors on the merits. Ultimately, though, we cannot reach any of her arguments. Article III of the Constitution allows us to resolve constitutional issues only when necessary to decide the legal rights of litigants in live "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc). For two reasons, Davis has failed to make out an Article III case here. She has not introduced enough evidence to show her standing to sue over the Facebook Rule. And the Township's recent repeal of the Meeting Rule has mooted her efforts to seek relief against it.

### A. Facebook Rule

Davis first challenges the Facebook Rule that allows the police department to remove "inappropriate or offensive" comments from its Facebook page, including comments that convey "racism," "hatred," "violence," or "vulgarity." Facebook Rules, R.24-2, PageID 382. Article III of the Constitution requires her to prove her "standing" to sue over this rule. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021). This doctrine prevents Davis from

challenging the rule in court merely as a concerned citizen. *See Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, 13 F.4th 531, 536–37 (6th Cir. 2021). Under the three-part test for standing, she instead must show that she has suffered (or will suffer) an injury, that the Facebook Rule likely caused (or will cause) the injury, and that her requested relief likely would redress it. *See id.* at 537.

Two components of the general standing framework go a long way toward proving that Davis lacks standing. Starting with the first component, Davis's precise burden to prove standing depends on the stage of her case. She needed only to plausibly allege standing's elements at the pleading stage. *See id.* at 543–44. On summary judgment, however, she must present enough evidence to create a genuine issue of material fact over each standing element. *See McKay*, 823 F.3d at 867–68. Conclusory allegations about a past injury or vague allegations about a future one will not do at this stage. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Turning to the second component, Davis cannot establish standing "in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (citation omitted). She must prove standing's elements for each claim and remedy. *See Thompson v. Whitmer*, 2022 WL 168395, at *2 (6th Cir. Jan. 19, 2022). This rule has several applications. For one thing, the rule means that standing to seek one form of relief does not create standing to seek another form. A claim of past injury, for example, generally permits a plaintiff to seek only the traditional backward-looking remedy for that harm: damages. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983). A previously harmed plaintiff may not seek a forward-looking remedy (an injunction to restrain the defendant's future conduct) without evidence that the harmful conduct will reoccur. *See id.*

For another thing, the rule means that standing to bring one claim does not create standing to bring another one. So when a plaintiff has been injured by one part of a law, the plaintiff cannot invoke that injury to challenge other parts of the law that have done nothing to the plaintiff. *See California v. Texas*, 141 S. Ct. 2104, 2119–20 (2021); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–35 (1990); *Outdoor One Commc'ns, LLC v. Charter Township of Canton*, 2021 WL 5974157, at *2 (6th Cir. Dec. 16, 2021); *Prime Media, Inc. v. City*

*of Brentwood*, 485 F.3d 343, 350–51 (6th Cir. 2007); *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004). In the language of standing, the plaintiff's injury in this situation is not "fairly traceable" to the other parts of the law that did not cause any injury. *Outdoor One*, 2021 WL 5974157, at *2.

Davis has fallen short of satisfying these standards here. She seeks both retrospective relief for a past injury (damages for the purported removal of her video from the Facebook page) and prospective relief for a future injury (an injunction and a declaratory judgment against any application of the Facebook Rule to her future speech). But she has not satisfied all three standing elements for either claim or its corresponding remedy. *See Cuno*, 547 U.S. at 353.

For her past injury (and request for damages), Davis cannot satisfy standing's causation element because this injury is not fairly traceable to the Facebook Rule. The removal of her video may well qualify as a valid Article III injury. *Cf. Outdoor One*, 2021 WL 5974157, at *2. According to the district court, however, there is no genuine issue of material fact that the police department removed Davis's video under a different rule that bars the "posting of photos or videos" by the public. Facebook Rules, R.24-2, PageID 382; *Davis*, 551 F. Supp. 3d at 818–19. In her appeal, Davis waived any challenge to this resolution of her as-applied claim (that her video was removed under the no-videos rule). Appellant's Br. 11 n.3. There is thus a mismatch between her past injury and her present claim. The past injury was caused by the no-videos rule, but she challenges the rule banning inappropriate or offensive comments. "The Government's conduct in question" (the removal of Davis's video) "is therefore not 'fairly traceable' to enforcement of the 'allegedly unlawful' provision of which [Davis] complain[s]" (the rule barring inappropriate or offensive comments). *California*, 141 S. Ct. at 2119 (citation omitted). And any potential standing that Davis might have had to seek damages from the enforcement of the no-videos rule does not give her standing to seek damages from the enforcement of this other rule barring inappropriate or offensive comments. *See Outdoor One*, 2021 WL 5974157, at *2–3; *Prime Media*, 485 F.3d at 350.

For her future injury (and requests for injunctive and declaratory relief), Davis cannot satisfy standing's injury element because she has not shown that the police department will likely apply the Facebook Rule to her in the future. Davis must show that she is at risk of suffering a

future injury that is "*certainly* impending." *Clapper*, 568 U.S. at 409 (citation omitted). In the context of the threatened enforcement of a regulation, this "certainly impending" test generally requires proof that a plaintiff plans to engage in conduct that the regulation arguably proscribes and that there is a credible threat that the defendant will enforce the regulation against the plaintiff. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014); *McKay*, 823 F.3d at 867.

Davis has not created a genuine issue of material fact for any part of this test. *See McKay*, 823 F.3d at 867–69. She has offered only conclusory testimony that she "wish[es] to continue" to make comments on the Facebook Page. Davis Decl., R.19-1, PageID 67. That is not enough. She must present evidence that her hypothetical future speech would be "arguably" "proscribed by" the Facebook Rule that she challenges. *Driehaus*, 573 U.S. at 162 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In other words, she must present evidence that she would make comments that someone could view as "inappropriate or offensive" or as conveying "racism," "hatred," "violence," or "vulgarity." Facebook Rules, R.24-2, PageID 382. But she has presented "mere allegations"—not evidence—in this regard. *See McKay*, 823 F.3d at 868. Indeed, her video that the police department allegedly removed contained nothing remotely approaching statements that could be described as "inappropriate," "offensive," or the like. So, even assuming that we may take the content of her past speech as evidence of the probable content of her future speech, Davis has not shown that the Facebook Rule would cover that future speech.

Nor has Davis shown a "credible threat" that the Colerain Police Department would enforce the Facebook Rule against her (unknown) future comments. *See Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366–67 (6th Cir. 2018). She has not, for example, identified any past enforcement of the rule against her. *Cf. Driehaus*, 573 U.S. at 164; *McKay*, 823 F.3d at 869. As noted, the police department removed her video under a separate rule banning videos. Davis also conceded that her many other (non-video) comments criticizing Chief Denney remained in the comments section of his post and that the police department had not removed them. Their continued visibility belies any inference that the police department used this Facebook Rule to silence her in the past. Denney likewise testified that he had never

removed any comment from the Facebook page under this rule and that he knew of nobody else's enforcement of the rule. *Cf. Plunderbund*, 753 F. App'x at 368–69. In short, any suggestion that the police department would enforce the challenged Facebook Rule against Davis's hypothetical future speech is "pure speculation and fantasy" on this summary-judgment record. *Lujan*, 504 U.S. at 567.

Davis's responses do not change things. Like many plaintiffs who cannot meet Article III's normal rules, she asks us to "relax[]" those rules because her case involves a sensitive free-speech question and a restriction that risks "chilling" speech. Reply Br. 3, 9. But Article III's case-or-controversy requirement provides a critical separation-of-powers check on the judiciary that we may not disregard simply because we think a legal question—"First Amendment or otherwise"—is important. *Golden v. Zwickler*, 394 U.S. 103, 110 (1969); *see Ass'n of Am. Physicians*, 13 F.4th at 536–37. Unsurprisingly, then, we have repeatedly rejected similar claims that concerns about "chilling" speech allow us to water down Article III's core constitutional components. *See Phillips v. DeWine*, 841 F.3d 405, 417 (6th Cir. 2016); *McKay*, 823 F.3d at 868–69.

Davis next invokes the "overbreadth" doctrine. This doctrine allows a plaintiff who has been injured by a law to invoke the rights of third parties even if the application of the law to the plaintiff does not violate the First Amendment. *See Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003). The doctrine has no relevance here. It amounts to an exception to the usual third-party-standing rule that one party may not enforce the rights of others. It does not (and could not) represent an exception to Article III's injury element. *See Phillips*, 841 F.3d at 417. Because the Facebook Rule has not injured Davis, she cannot rely on the rights of others to challenge it.

Switching to the facts, Davis asserts that the removal of her video shows that the Facebook Rule has harmed her in the past. Reply Br. 7–8. Even if this injury is small, she adds, she may at least seek "nominal" damages for it. *Id.* at 16 (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798–802 (2021)). She ignores the district court's conclusion that the record left no doubt that the video was removed under a different rule barring videos. *See Davis*, 551 F. Supp. 3d at 818–19. She also ignores her own concession that she did not challenge the district court's ruling on this as-applied claim. Appellant's Br. 11 n.3. In light of the court's

conclusion and Davis's concession, we must take as a given that the Facebook Rule has never been applied to her.

Davis lastly notes that the police department has not "disavowed enforcement" of its Facebook Rule. *Driehaus*, 134 S. Ct. at 165. But that fact does nothing to show that Davis plans to engage in speech that might arguably fall within the rule. *See McKay*, 823 F.3d at 867–68. In any event, this piece of evidence is just one data point among many on the question whether a credible threat of enforcement exists. *See Plunderbund*, 753 F. App'x at 366–67. Chief Denney also noted in the *abstract* that he might consult the department's legal counsel about enforcing the rule against, say, a racial slur. Denney Dep., R.24-1, PageID 255, 258. He did not suggest that he would enforce the rule against anything like Davis's *specific* speech, and she (unsurprisingly) has not suggested that she plans to post comments containing racial slurs. She thus has not shown a credible threat that the Township would prosecute her for any type of speech in which she wishes to engage. *Cf. McKay*, 823 F.3d at 870.

One final point. We have suggested that standing to challenge one provision of a law might create standing to challenge another one when the two provisions are not "severable" from each other. *See Outdoor One*, 2021 WL 5974157, at *5. But Davis does not claim that the rule banning videos is inseverable from the separate rule banning inappropriate or offensive comments. We thus need not consider any severability questions in this case.

## B. Meeting Rule

Davis next challenges the Meeting Rule that bars speakers from making "disrespectful" statements during board meetings. 2020 Rules, R.29-1, PageID 726. Her claim against this rule fails for a different reason: the Township's board of trustees has since repealed the rule. The claim has thus become moot.

Even if a plaintiff has the standing required to bring a case in federal court, Article III requires a real dispute to exist at all stages of the litigation in order for the plaintiff to remain in court. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). When later events have eliminated the plaintiff's injury or made it impossible for the court to grant relief, the case has become moot and a court must dismiss it. *See Resurrection Sch.*, 35 F.4th at 528. If, for

example, a defendant stops engaging in the conduct that threatens to harm the plaintiff, this choice could moot a request for an injunction against that conduct. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–92 (2013). That scenario often arises when a legislature repeals a challenged law or an executive officer repeals a challenged regulation. *See Resurrection Sch.*, 35 F.4th at 528; *see also Thompson*, 2022 WL 168395, at *3 (citing cases).

Yet fearing that the defendant will simply revert to its old injurious ways after the dismissal of the suit, courts start with skepticism over whether this type of "voluntary cessation" has mooted a case. *See Already*, 568 U.S. at 91. A defendant must show that it is "absolutely clear" that its rescinded conduct could not "reasonably be expected" to happen in the future. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Government defendants have an easier time satisfying this test because we presume that they will not resume their challenged conduct unless objective evidence suggests that they have made a bad-faith change to avoid judicial review. *See Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767–69 (6th Cir. 2019)). This presumption gains even more strength if the government has changed course through a formal process because the formalities involved make it more difficult to reinstitute the old policy later. *See id.* A legislative repeal presumptively moots a case, for example, because of the difficulty of going through the legislative process again to reenact the rescinded law. *See id.*

A case has also more likely become moot when the government has made the change because of something external to the plaintiff's suit. *See Thompson*, 2022 WL 168395, at *3 (citing *Geduldig v. Aiello*, 417 U.S. 484, 491–92 (1974)). In that scenario, it is unlikely that the suit's dismissal would cause the defendant to return to its old ways because the defendant made the change for a different reason. We have repeatedly held, for example, that federal challenges to a governor's stay-at-home orders were mooted by the governor's rescission of the orders when that rescission arose from a separate state supreme court opinion finding the orders invalid (rather than from the plaintiffs' suits). *See id.* at *3–4; *see also Midwest Inst. of Health, PLLC v. Whitmer*, 2022 WL 304954, at *2 (6th Cir. Feb. 2, 2022); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 843 F. App'x 707, 708–10 (6th Cir. 2021).

The same logic applies here.  In July 2021, the Township's board repealed the Meeting Rule that barred "disrespectful" speech.  The board unanimously voted on this amendment to its rules in a formal "legislative-like" meeting.  *Cf. Thomas*, 996 F.3d at 326.  The meeting minutes show that the board adopted the change in light of an "external" factor separate from Davis's suit.  *Cf. Thompson*, 2022 WL 168395, at *3.  Legal counsel informed the board that the Sixth Circuit had "recently" issued a decision "with respect to participation rules" at government meetings.  Bd. Minutes, 6 Cir. R.31 at 10.  The week before the board meeting, our court had held that a school board's restriction on "abusive" or "antagonistic" statements at board meetings violated the First Amendment.  *See Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893–94 (6th Cir. 2021).  The board thus acted timely and responsibly to update its rules in light of this significant precedent.  Nothing in the record makes us suspicious that the board insincerely adopted the change only to get rid of Davis's suit so it could reimpose the rescinded rule after we dismissed it.  *See Resurrection Sch.*, 35 F.4th at 529.  The change has thus mooted Davis's claim for prospective relief against that rule.  *See id.*

Davis responds that the Township did not make this mootness argument in the district court even though the board's repeal occurred a couple of weeks before that court issued its decision.  Yet a mootness finding deprives a court of subject-matter jurisdiction.  *See Arizonans for Off. Eng.*, 520 U.S. at 67.  We thus have an independent duty to raise mootness questions, and the parties lack the ability to forfeit (or waive) mootness challenges.  *See Brock v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 889 F.2d 685, 687 n.1 (6th Cir. 1989).  So while the Township should have immediately alerted the district court of this change, its failure to provide this notice cannot relieve us of the duty to consider the mootness issue.

Davis also argues that appellate courts generally do not consider new evidence for the first time on appeal.  But litigants must inform courts of facts that might moot a case even if they learn of the facts at that late stage.  *See Arizonans for Off. Eng.*, 520 U.S. at 68 n.23.  Appellate courts also can take judicial notice of, for example, administrative rules, regulations, and orders, and certain judicial and public records.  *See* Fed. R. Evid. 201(d); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012); *United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008).

Besides, Davis offers no non-conclusory arguments why we cannot now consider the board's change to its rules or its official meeting minutes. *Cf. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968). We thus need not conclusively resolve any judicial-notice questions in this case.

Davis next suggests that the board's change would only moot her request for an injunction, not her request for nominal damages arising from the board's past enforcement of the rescinded rule. True, the Supreme Court has held that a request for nominal damages for a past injury can keep a case alive even if the defendant has changed its policy in a way that moots any request for prospective relief. *See Uzuegbunam*, 141 S. Ct. at 797–802. But *Uzuegbunam* addressed only standing's third element by holding that nominal damages can satisfy Article III's redressability element. *Id.* at 797, 802 n.*. The decision said nothing about what it takes to plead a cognizable past injury under Article III. *See id.* at 802. It thus does not help Davis here because she has not shown that she suffered such an injury as a result of the Meeting Rule. She testified that the board's president once told her that she could not speak "disrespectfully" at board meetings. Davis Decl., R.19-1, PageID 67. She does not say that the board prevented her from talking or otherwise punished her. A mere suggestion that a speaker be polite does not result in any cognizable injury to the speaker. *Cf. Savage v. Gee*, 665 F.3d 732, 741 (6th Cir. 2012).

Davis thus turns to seeking nominal damages for past injuries to other parties. She notes that the board has previously enforced the rule against two other speakers by stopping their speeches and removing them from meetings. But she cannot invoke the constitutional rights of these third parties in an overbreadth claim unless she herself has Article III standing. *See Phillips*, 841 F.3d at 417. Regardless, plaintiffs raising overbreadth claims cannot pursue monetary relief because "damages are available only for violation of the plaintiff's own rights," not the rights of third parties. 13A Charles A. Wright et al., *Federal Practice & Procedure* § 3531.9.4, at 270–71 & n.50.5 (3d ed. Supp. 2020) (citing *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007)). The Township's removal of these other people thus cannot support Davis's nominal-damages request.

* * *

The district court granted summary judgment to the Township on Davis's facial challenges, and it thus dismissed those challenges with prejudice. Because the court lacked jurisdiction to decide the merits of these claims, however, it should have dismissed them without prejudice. Yet we may modify the judgment "to clarify" its jurisdictional (and non-prejudicial) nature. *Perna v. Health One Credit Union*, 983 F.3d 258, 274 (6th Cir. 2020). As so modified, we affirm.

———————————

## CONCURRENCE

———————————

ROGERS, J., concurring.   I concur in the result, and join the majority's lucid opinion entirely, except with respect to dismissal of the damages claim for past harm.  To be sure, that claim should be dismissed for lack of causation, but the lack of causation results in a failure to state a claim, not in a lack of constitutional standing.

Most suits for money judgment are brought on the basis of a cause of action in which wrongful activity must cause (usually proximately cause) loss to the plaintiff.  In negligence suits the violation of the standard of care must (proximately) cause damages to the plaintiff.  In an employment discrimination suit, the discriminatory act must cause loss to the plaintiff employee.  In a contract suit, the contract breach must result in different money damages.  And so on.  In virtually all of these cases, the required causation of harm is an element of the cause of action, analyzed as such.  If the plaintiff fails to allege sufficient causation, or any damage at all, the claim is dismissed for failure to state a claim.  There is standing, however, because the plaintiff is seeking a money judgment that, if ordered, would result in a benefit to the plaintiff.  In other words, there is usually a case or controversy when a plaintiff makes unsubstantial claims for money, even where some elements of the cause of action are only frivolously asserted.  If the causation and harm elements of the causation issue in all of these cases is jurisdictional, then every federal court must decide such an issue first, and the court's decision will stand as precedent only for the jurisdictional issue.  Further, if the causation issue in every diversity tort case, and every employment discrimination case, is one of constitutional law, the legislatures, state or federal, that provide for the cause of action do not have the final say as to the substantive content of core elements of the cause of action.

This case is no different.  Plaintiff seeks damages for the removal of the video clip from the website, and thus presumably has standing.  In the words of the majority, there is "a mismatch between her past injury and her present claim.  The past injury was caused by the no-videos rule, but she challenges the rule banning inappropriate or offensive comments." *Supra* at 8.  For constitutional purposes there is no difference between that determination in a money-

damages claim and a decision in a diversity tort case that a plaintiff's injuries from a car crash were not proximately caused by a defendant mechanic's negligence.  It is hard to think that the framers would not consider that a "case or controversy."